# EXHIBIT A

Electronically FILED by Superior Court of California, County of Los Angeles on 07/12/2022 10:04 AM Sherri R. Carter, Executive Officer/Clerk of Court, by S. Ruiz, Deputy Clerk
22STCV22322

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

RLI INSURANCE COMPANY, an Illinois corporation; and DOES 1 to
50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ROYAL 4 SYSTEMS, a California corporation

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Los Angeles County Superior Court | **CASE NUMBER:**<br>*(Número del Caso):*<br>22STCV22322 |
|---|---|

Central District - Stanley Mosk Courthouse
111 N. Hill St., Los Angeles, CA 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Schlichter & Shonack, LLP, 2381 Rosecrans Ave., Ste. 326 El Segundo, California 90245, (310) 643-0111

| DATE: 07/12/2022 | Sherri R. Carter Executive Officer / Clerk of Court | |
|---|---|---|
| *(Fecha)* | Clerk, by S. Ruiz | , Deputy |
| | *(Secretario)* | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* RLI INSURANCE COMPANY, an Illinois corporation

under: ☒ CCP 416.10 (corporation)  ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

Electronically FILED by Superior Court of California, County of Los Angeles on 07/12/2022 10:54 AM Sherri R. Carter, Executive Officer/Clerk of Court, by S. Ruiz,Deputy Clerk
22STCV22322

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Yolanda Orozco

1

2  **SCHLICHTER & SHONACK, LLP**
JAMIE L. KEETON (CA SBN 265267)
3  PATRICK J.L. CLEVELAND (CA SBN 338706)
2381 Rosecrans Ave., Suite 326
4  El Segundo, CA 90245
Telephone: (310) 643-0111
5  Fax: (310) 643-1638
jlk@sandsattorneys.com
6  pjc@sandsattorneys.com
**Please Include Service to**: kab@sandsattorneys.com
7
Attorneys for Plaintiff
8  ROYAL 4 SYSTEMS

9                    SUPERIOR COURT OF CALIFORNIA

10        IN AND FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

11  ROYAL 4 SYSTEMS, a California          Case No. 22STCV22322
corporation,                           (Unlimited Jurisdiction)
12
13          Plaintiff,
14                                          **COMPLAINT FOR DAMAGES**

15          v.                              1.  **BREACH OF CONTRACT**
                                           2.  **BREACH OF COVENANT OF**
16                                              **GOOD FAITH AND FAIR**
17  RLI INSURANCE COMPANY, an Illinois         **DEALING**
corporation; and DOES 1 to 50, inclusive,
18
19          Defendants.                     **DEMAND FOR JURY TRIAL**
20
21
22        TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:
23
24        Plaintiff ROYAL 4 SYSTEMS (hereinafter "ROYAL 4" or "plaintiff") hereby complains
25  and alleges as follows:
26  ///
27  ///
28
                                    1
                              **COMPLAINT**

## GENERAL ALLEGATIONS

1. Plaintiff Royal 4 is a California corporation licensed to do business in the State of California.

2. At all material times herein alleged, defendant RLI Insurance Company (hereinafter "RLI") is an insurer that is authorized to issue and delivery policies of liability in the State of California.

3. Plaintiff is unaware of the true identity, nature and capacity of each of the defendants designated herein as a DOE. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as a DOE is in some manner responsible for the damages and injuries as are alleged in this complaint. Upon learning the true identity, nature and capacity of the DOE defendants, plaintiff will amend this complaint to allege their true names and capacities.

4. Plaintiff is informed and believes and thereon alleges that at all material times herein alleged that the defendants, and each of them, were the agents, servants and employees of the other defendants, and each of them.

5. Plaintiff Royal 4 purchased, timely paid all premiums for, and performed all duties required of it to be performed under two "Technology Professionals Policy" insurance policies issued by RLI, Policy No.'s TEC0002639 ("Policy 2639") and TEC0002871 ("Policy 2871", collectively the "Policies").

6. Policy 2639 was purchased in or about March 2018 and provided plaintiff Royal 4 coverage from March 19, 2018, to March 19, 2019. The premiums for one year of coverage under Policy 2639 totaled $4,679.00. A true and correct copy of Policy 2639 is attached as Exhibit "A" to this complaint and incorporated herein by reference as though fully set forth at length.

7. Policy 2871 was purchased in or about March 2019 and provided Royal 4 coverage from March 19, 2019, to March 19, 2020. The premiums for one year of coverage under Policy 2871 totaled $3,648.00. A true and correct copy of Policy 2871 is attached as

Exhibit "B" to this complaint and incorporated herein by reference as though fully set forth at length.

8.   Plaintiff is informed and believes and thereon alleges that the Policies were delivered to Plaintiff in the State of California and that all premiums for the policy were paid in California.

9.   In exchange for payment of the premiums, defendant RLI agreed to provide the insurance coverage described in the Policies.

10.  The "Technology Services Liability Coverage" is one of seven types of coverage purchased by Royal 4 and stated in the "INSURING CLAUSES" portions of the Policies.

11.  The Policies provide "Technology Services Liability Coverage" coverage for damages and claims through the following provisions:

> 1.   **Technology Services Liability Coverage**
>
> ...
>
> **[T]he Insurer will pay on behalf of the "Insured," those sums which the "Insured" is legally obligated to pay as "Damages" and "Claim Expenses" as a result of any "Claim" first made against the "Insured" during the "Policy Period" and reported in writing to the Insurer as soon as practicable during the "Policy Period" or the Extended Claims Reporting Period (if applicable), for any "Wrongful Act" in the performance or failure to perform "Technology Services," including a "Wrongful Act" resulting in "Personal Injury," that first occurred on or after the "Retroactive Date."**

12.  All terms in the Policies which appear in quotation marks are defined terms in the Policies.

13.  "Insured" is defined in the Policies as follows:

> **"Insured" means the following:**
>   a) **the "Named Insured(s)" designated in Item of the Declarations;**
>   b) **any "Subsidiary(ies)";**
>   c) **any current or former partner, principal, member, executive, officer or director of the "Insured Entity," but solely with respect to the performance of his or her duties as such on behalf of the "Insured Entity" that are within the scope of his or her position;**
>   d) **any current or former employee(s) or independent contractor(s) of the "Insured Entity," but solely with respect to the performance of**

his or her duties on behalf of the "Insured Entity" that are within the scope of his or her employment or contract;

e) solely as respects Insuring Clauses 1., 2., 3. and 4., the heirs, executors, administrators, assigns and legal representatives of each of the above "Insured(s)" in the event of the "Insured's" death, incapacity or bankruptcy; and

f) solely as respects Insuring Clauses 1., 2., 3. and 4., the lawful spouse or domestic partner (whether such stature is derived by reason of statutory law, common law, or any other applicable law of any jurisdiction in the world) of any individual that qualifies as an "Insured" pursuant to subsections c. or d. of this definition, but only with respect to "Claims" arising solely out of his or her capacity as the spouse or domestic partner of such "Insured," including such "Claims" that seek damages recoverable from marital community property, property jointly held by such Insured and the spouse or domestic partner; or property transferred from such Insured to the spouse or domestic partner; provided, however, that this extension shall not afford coverage for any acts or omissions of the spouse or domestic partner.

14.   "Damages" is defined in the Policies as follows:

"Damages" means any monetary judgment or award the "Insured" is legally obligated to pay, or a settlement negotiated with the consent of the "Insured" and the Insurer, including pre/post-judgment interest on a covered judgment, punitive or exemplary damages (where insurable by law, and the enforceability of such coverage shall be governed by such applicable law that most favors coverage for punitive or exemplary damages), but shall not mean or include any of the following:

a) civil, criminal, administrative or regulatory fines or penalties, taxes, or trebled or other multiple damages;

b) the return, restitution, disgorgement, offset, reduction or dispute over any fees, profits, deposits, expenses, costs, or commissions charged or collected by the "Insured";

c) the cost to comply with any injunctive or other non-monetary or declaratory relief or any agreement to provide such relief;

d) any monetary judgment or award, or settlement, with respect to a "Regulatory Action," including without limitation any remedial funds, compensatory awards, or costs related to the establishment, implementation, management or oversight of an information security program or privacy law compliance program; or

e) any matters deemed uninsurable by law.

15.   "Claim Expenses" is defined in the Policies as follows:

"Claim Expenses" means:

4

**COMPLAINT**

a) reasonable and necessary attorney's fees, expert witness fees and other reasonable and necessary fees and costs incurred by the Insurer, or by the "Insured" with the Insurer's prior written consent, in the investigation and defense of covered "Claims"; and

b) premiums for any appeal bond, attachment bond or similar bond in covered "Claims," provided the Insurer shall have no obligation to apply for or furnish such bond.

However, Claim Expenses shall not mean or include salaries, wages or benefits of employees, directors or officers of the Insured or the Insurer, overhead costs, or any expenses incurred by the Insured in assisting or cooperating with the Insurer.

16.     "Policy Period" is defined in the Policies as follows:

"Policy Period" means the period of time specified in Item 2. of the Declarations of this Policy, subject to prior nonrenewal, cancellation or termination. If this period is less than or greater than one year, then the Limits specified in the Declarations shall be the Insurer's maximum limit under each Insuring Clause for the entire period. "Policy Period" does not include any Automatic Extended Claims Reporting Period. If the length of the "Policy Period" is the same as the "Policy Year," the terms "Policy Period" and "Policy Year" are used interchangeably herein.

17.     "Wrongful Act" is defined in the Policies as follows:

"Wrongful Act" means any actual or alleged act, error, omission, neglect or breach of duty committed by any "Insured" or by any person for whom the "Insured" is legally liable.

18.     "Technology Services" is defined in the Policies as follows:

"Technology Services" means "Application Service Provider," "Computer Services," "Electronic Data Processing," "Electronic Data Processing Consulting," "Programming," "System Analysis/Software Design," or "Web Portal Services," provided, however, that "Technology Services" are performed for others for a fee by the "Insured" or by any person or entity acting on behalf of the "Insured."

19.     "Personal Injury" is defined in the Policies as follows:

"Personal Injury" means any actual or alleged:

a) false arrest, detention or imprisonment;
b) wrongful entry or eviction or other invasion of private occupancy;
c) malicious prosecution;

5

COMPLAINT

      d) libel, slander or other defamatory or disparaging material; or
      e) a publication or an utterance in violation of an individual's right of privacy.

20. "Retroactive Date" is defined in the Policies as follows:

> **"Retroactive Date" means the applicable retroactive date(s) set forth in Item 9. of the Declarations.**

21. Plaintiff Royal 4 submitted a proposal to Echota Fabrics, Inc.("Echota") bearing a date of April 3, 2014, whereby Royal 4 would implement a warehouse management system for Echota in exchange for fees. The proposal was accepted. Royal 4 completed the implementation in or about January 2017 and Echota began using the warehouse management system.

22. On April 24, 2019, Echota commenced action against Royal 4 by filing a complaint in the Gordon County (Georgia) Superior Court ("Action") alleging causes of action for breach of contract and breach of warranty, in connection with the April 3, 2014, proposal.

23. Echota's complaint alleged that Royal 4's alleged breaches entitled Echota to recover all monies advanced to Royal 4 in anticipation of performance under the contract, in addition to alleged consequential damages that it suffered.

24. On June 10, 2019, Royal 4 provided RLI notice of Echota's Action and initiated a Claim ("Claim") via telephone.

25. Royal 4, at all times herein mentioned, had and has performed all the terms and conditions of the Policies on its part to be performed.

26. Notwithstanding plaintiff Royal 4's request, defendant RLI denied all liability under the Policies and refused to undertake the defense of Echota's action against this plaintiff.

27. RLI has essentially been treating Royal 4 as a moving target. RLI initially asserted in a letter to Royal 4 dated June 21, 2019, that the Claim was not first made during the policy period and as a result the insuring agreement of Policy 2871 was not triggered. Additionally, the same letter alleged that Royal 4 concealed/misrepresented material information in its application for coverage. The letter further asserted that the damages and claims alleged in Echota's complaint are limited and/or excluded from coverage.

28.     On or about July 8, 2019, Jamie Keeton, counsel for Royal 4, mailed a letter to RLI addressing their issues for denying coverage. Ms. Keeton explained that the Claim, which was initially made under Policy 2871, should have actually been made under Policy 2639, since the Claim arose during the coverage period of Policy 2639. As Royal 4's insurance provider, this is an issue that easily could have been avoided had RLI undertaken an adequate investigation of the Claim and the Policies it provided to its insured. Ms. Keeton further explained that Royal 4 purchased from RLI an optional reporting period extension on Policy 2639 of 12 months, as indicated in the language of Policy 2639, and thus the Claim arose and was reported during the period of coverage. Ms. Keeton further explained that RLI's allegation that Royal 4 made misrepresentations in its renewal application was improper and that the reasoning does not apply because the claim should have been made under Policy 2639. Ms. Keeton addressed RLI's issues with the damages and claims alleged in Echota's complaint by explaining that the language under both Policies is the same, and specifically states that warranty claims, such as the one brought against Royal 4, would attach to the transaction as a matter of law even in the absence of a contract or warranty. This is because Georgia, the state where the Action is based, has adopted the Uniform Commercial Code which provides for implied warranties, even absent a contract.

29.     RLI sent Ms. Keeton a letter dated July 9, 2019, continuing its denial of coverage under both Policies and repeating its unacceptable reasoning as the Claim not being made during the policy period and making misrepresentations in its renewal application.

30.     On or about September 5, 2019, Jeremy Cowan, counsel for Royal 4, sent RLI a letter further explaining that the Claim was made under the incorrect policy, and providing notice to RLI that Echota filed a first amended complaint with allegations that clearly fall under the Policies which cover Royal 4.

31.     RLI responded to Mr. Cowan's letter in a letter dated October 2, 2019. The letter again repeated RLI's reasoning for denial as due to the Claim not being made during the policy period.

**COMPLAINT**

32.     Despite repeated attempts by Royal 4 and its attorneys to ascertain from RLI the grounds for its assertion, RLI failed and refused to undertake an adequate investigation of the Claim.

33.     On or about May 6, 2021, Echota's Action was settled for the sum of $200,000.00, which this plaintiff has paid.

34.     On or about August 4, 2021, Ms. Keeton demanded on Echota's behalf that RLI pay said settlement, and $35,504.89 in attorney's fees, totaling $235,504.89. RLI failed and refused to do so. As a proximate result of RLI's failure and refusal, plaintiff, on or about May 11, 2021, paid that settlement and thereby sustained damages in the sum of $235,504.89, the amount of the settlement, together with attorney's fees.

35.     In committing the acts described in paragraphs 26 – 34 of this complaint, RLI acted in conscious disregard of the rights of plaintiff and was guilty of malice and oppression in that it intentionally denied a claim that should have been covered under the Policies. In doing so, RLI put their insured in a vulnerable position. The conduct of RLI warrants an assessment of punitive damages in an amount appropriate to punish RLI and deter others from engaging in similar wrongful conduct.

## FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
### (Against All Defendants)

36.     Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 35 as though fully set forth at length.

37.     Plaintiff is informed and believes and thereon allege that defendants, and each of them, breached their obligation under the Policies in the following manner:

38.     By delaying in making any determination under all potentially applicable coverages as to whether or not any defense was owed by the defendants, or any of them, to plaintiff for the claims arising out of Echota's Action;

8
**COMPLAINT**

39.   By failing to conduct a full and complete investigation into the facts and circumstances of the claims asserted against plaintiff in the Action;

40.   By failing and refusing to defend plaintiff from the claims asserted in Echota's Action;

41.   By failing and refusing to indemnify plaintiff from the claims asserted in Echota's Action; and,

42.   By doing each of the acts or omissions alleged in paragraphs 26 – 34.

43.   Plaintiff is informed and believes that the defendants, and each of them, failed and refused to conduct an investigation into the facts and circumstances of the claims asserted against plaintiff in Echota's Action. As a result of the breaches of contract by the defendants, or any of them, to conduct any investigation in the facts and circumstances of the claims asserted against plaintiff, plaintiff has been damaged, injured and prejudiced. Plaintiff was required to retain counsel and defend themselves against the claims asserted against them. Plaintiff was also forced to enter into a settlement on a claim which plaintiff vigorously denied any wrongdoing and/or disputed any liability.

44.   As a result of the failure and refusal of the defendants, or any of them, to conduct an investigation, the defendants and each of them are estopped from relying upon any subsequently discovered information to support their rejection of plaintiff's tender of its defense in the Echota Action.

45.   As a result of the failure and refusal of the defendants, or any of them, to conduct an investigation, the defendants and each of them are deemed to have waived any obligation on the part of plaintiff to cooperate with the defendants and each of them in defense of the Echota Action.

46.   As a direct and proximate result of the breach by the defendants of their obligations under the Policies, plaintiff has been damaged as follows:

A. Plaintiff was required to retain attorneys to defend itself from the claims asserted in Echota's Action all in an amount to be proved at time of trial;

9
**COMPLAINT**

B. Plaintiff was required to enter into and pay for a settlement of the claims asserted in the Echota Action all in an amount of $200,000; and,

C. General damages in an amount to be proved at time of trial.

47.     Plaintiff is informed and believes and thereon alleges that the denial of coverage, as alleged in this complaint, was vexatious and without reasonable cause, as alleged in this complaint. Pursuant to Insurance Code section 1619, plaintiff is entitled to reasonable attorney fees incurred in prosecuting this action in an amount to be proved at time of trial.

## SECOND CAUSE OF ACTION

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against All Defendants)

48.     Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 47 as though fully set forth at length.

49.     Plaintiff is informed and believes and thereon alleges that the defendants and each of them breached the implied covenant of good faith and fair dealing arising out of the Policies, in the following respects:

A. The defendants, and each of them, unreasonably and without proper cause failed and refused to conduct an investigation into the facts which gave rise to the claims asserted in Echota's Action;

B. The defendants, and each of them unreasonably and narrowly interpreted the Policies in a manner calculated to deny benefits due to plaintiff under the Policies, including refusing to consider coverage under either of the Policies paid for by Royal 4 and improperly asserting that the damages and claims alleged in Echota's complaint were excluded from coverage

C. The defendants, and each of them, unreasonably refused to pay for the defense of the Echota Action; and,

10

COMPLAINT

D. The defendants, and each of them, unreasonably refused to pay for the settlement of the Echota Action.

50.     The denial of benefits claimed by plaintiff under the Policies was done by the defendants without reasonable cause. Defendants knew that a duty to defend was owed to plaintiff, yet refused to provide such a defense. As a direct and proximate result of the unreasonable conduct of the defendants, and each of them, plaintiff has been required to retain attorneys to obtain benefits due to it under the Policies. Plaintiff was also forced to enter into a settlement on a claim which plaintiff vigorously denied any wrongdoing and/or disputed any liability.

51.     As a direct result of the tortious conduct of the defendant and each of them, plaintiff was damaged and injured. Plaintiff, is therefore, entitled to recover:

A. Reasonable attorney fees incurred by plaintiff in obtaining policy benefits in an amount to be proved at time of trial;

B. the settlement payments made by plaintiff, the attorney fees incurred in defending the Echota Action.

52.     Plaintiff is informed and believes and thereon alleges that the defendants, and each of them, intentionally engaged in a course of conduct which was intended to oppress plaintiff and to dissuade plaintiff, and their counsel from seeking benefits due to plaintiff under the Policies by denying a claim that should have been covered under the Policies.

53.     The refusal of the defendants and each of them to carry out their obligations under the Policies to investigate, defend, indemnify and to promptly communicate their coverage position to their insured, and the acts of their agents were all done with a conscious disregard of the rights of plaintiff to receive the benefits due to it under the Policies. These acts were done with the knowledge and approval and ratification of the defendants and each of them. These acts continued even after plaintiff protested to the defendants and plaintiff was powerless to obtain from the defendants compliance with their obligations. Plaintiff is therefore entitled to recover punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff ROYAL 4 SYSTEMS prays for judgment against defendants, and each of them, as follows:

1. For the sum of $35,504.89 as attorney's fees and costs and expenses incurred and paid by this plaintiff in defending the third-party action against it, together with interest on those sums at the legal rate from and after the date they were paid;

2. For the sum of $200,000.00 as reimbursement of the amount paid by this plaintiff in settlement of the third-party action, together with interest on that sum at the legal rate from and after May 18, 2021;

3. For general damages in an amount to be proven at trial;

4. For exemplary and punitive damages;

5. For costs of suit herein incurred;

6. For attorneys fees for the instant action; and

7. For such other and further relief as the court may deem proper.

Dated: July 11, 2022

Respectfully Submitted,

SCHLICHTER & SHONACK, LLP

By: JAMIE L. KEETON
    PATRICK J.L. CLEVELAND
Attorneys for Plaintiff
ROYAL 4 SYSTEMS

# DEMAND FOR JURY TRIAL

Plaintiff ROYAL 4 SYSTEMS demands a trial by jury as to all claims triable by a jury.

Dated: July 11, 2022

Respectfully Submitted,

SCHLICHTER & SHONACK, LLP

By: JAMIE L. KEETON
PATRICK J.L. CLEVELAND
Attorneys for Plaintiff
ROYAL 4 SYSTEMS

# Exhibit A

Policy Number: TEC0002639

**RLI®**

# NOTICE TO OUR BROKERS AND AGENTS
# OF OUR CLAIM NOTIFICATION PROCEDURE

As part of our continuing effort to provide you with the best service available, ALL CLAIMS, OCCURRENCES, INCIDENTS and LAWSUITS under this policy are to be reported immediately to:

**Broker Fixated Fixated Financial & Insurance Solutions, Inc. RLI Insurance Company**

**Email (preferred):  New.Claim@rlicorp.com**

**Fax:  (855) 266-2136**

**Phone:  (855) 266-2135**

**Street Address:  9025 N. Lindbergh Drive, Peoria, IL  61615 Mailing**

**Address:  P.O. Box 3961, Peoria, IL 61612-3961**

When reporting the incident, be prepared to supply a report of claim or the following information:
1.  Policy Number
2.  Contact Person information (name, address, phone, etc.)
3.  Nature of incident
4.  Date of incident

When reporting multiple incidents, please send each loss notice separately.

RIL 2131 (08/12)

# RLI Technology Professionals Policy™



RLI Insurance Company
9025 North Lindbergh Drive
Peoria, Illinois 61615

A stock insurance company,
herein called the Insurer.

**THIS POLICY CONTAINS BOTH LIABILITY AND LOSS COVERAGE. INSURING CLAUSES 1., 2., 3. AND 4. ARE PROVIDED ON A CLAIMS MADE AND REPORTED BASIS. CLAIM EXPENSES SHALL REDUCE THE APPLICABLE LIMIT OF LIABILITY. INSURING CLAUSES 5., 6., 7. AND 8. ARE PROVIDED FOR LOSS OCCURRING DURING THE POLICY PERIOD. ALL PAYMENTS UNDER THIS POLICY SHALL REDUCE THE APPLICABLE LIMIT.**

**THIS POLICY ONLY AFFORDS COVERAGE UNDER THOSE INSURING CLAUSES BELOW THAT ARE INDICATED AS PURCHASED ON THIS DECLARATIONS PAGE.**

Policy Number:  TEC0002639

Item 1.  **Named Insured:**

Royal 4 Systems
5000 E. Spring St.
Suite 415
Long Beach, CA 90815

Item 2.  **Policy Period:**   From   03/19/2018   12:01 A.M.
                           To     03/19/2019   12:01 A.M.
                           Local Time at the address shown above.

Item 3.  Coverage Purchased:

| | | | | |
|---|---|---|---|---|
| a. | Technology Services Liability Coverage | (Insuring Clause 1.): | ☒ Yes | ☐ No |
| b. | Enterprise Privacy Liability Coverage | (Insuring Clause 2.): | ☒ Yes | ☐ No |
| c. | Electronic Media Liability Coverage | (Insuring Clause 3.): | ☒ Yes | ☐ No |
| d. | Network Security Liability Coverage | (Insuring Clause 4.): | ☒ Yes | ☐ No |
| e. | Crisis Management Loss Coverage | (Insuring Clause 5.): | ☒ Yes | ☐ No |
| f. | Network Interruption Business Income & Extra Expense Loss Coverage | (Insuring Clause 6.): | ☒ Yes | ☐ No |
| g. | Data Loss Coverage | (Insuring Clause 7.): | ☒ Yes | ☐ No |
| h. | Cyber Extortion Loss Coverage | (Insuring Clause 8.): | ☒ Yes | ☐ No |

Item 4.  Policy Annual Aggregate Limit of Liability
for all Coverage Purchased:                         $1,000,000

Item 5.  Sublimits for Coverage Purchased:

| | | | | |
|---|---|---|---|---|
| a. | Technology Services Liability Coverage | (Insuring Clause 1.): | $1,000,000 $1,000,000 | each **Claim** each **Policy Year** Aggregate |
| b. | Enterprise Privacy Liability Coverage | (Insuring Clause 2.): | $1,000,000 $1,000,000 | each **Claim** each **Policy Year** Aggregate |
| c. | Electronic Media Liability Coverage | (Insuring Clause 3.): | $1,000,000 $1,000,000 | each **Claim** each **Policy Year** Aggregate |
| d. | Network Security Liability Coverage | (Insuring Clause 4.): | $1,000,000 $1,000,000 | each **Claim** each **Policy Year** Aggregate |

Item 5.  Sublimits for Coverage Purchased (continued):

|   |   |   |   |
|---|---|---|---|
| e. | Crisis Management Loss Coverage | (Insuring Clause 5.): | $100,000 |
| f. | Network Interruption Business Income & Extra Expense Loss Coverage | (Insuring Clause 6.): | $100,000 |
| g. | Data Loss Coverage | (Insuring Clause 7.): | $100,000 |
| h. | Cyber Extortion Loss Coverage | (Insuring Clause 8.): | $100,000 |

Coverages e., f., g. and h. referenced above are subject to **Insuring Clause 5-8 Sublimit**.

Item 6.  **Insuring Clause 5-8 Sublimit:**                                             $100,000

Item 7.  **Deductible** for each **Claim** and **Loss:**                               $2,500

Item 8.  **Waiting Period** (applicable to Insuring Clause 6.):          6          business hours

Item 9.  **Retroactive Date** for Liability Coverage Purchased:

| | | |
|---|---|---|
| a. | Technology Services Liability Coverage | 03/19/2001 |
| b. | Enterprise Privacy Liability Coverage | 03/19/2013 |
| c. | Electronic Media Liability Coverage | 03/19/2013 |
| d. | Network Security Liability Coverage | 03/19/2013 |

Item 10.  Optional Extended Claims Reporting Period:

| | | |
|---|---|---|
| a. | Optional Extended Claims Reporting Period Premium: | $3,041.00 |
| b. | Optional Extended Claims Reporting Period: | 12 months |

Item 11.  Termination of Prior Policies:                                          TEC0002329

Item 12.  Policy Premium:                                          $ 4,679.00 Not including Program Premium, Fees
Surcharges:                                                                     $N/A

Item 13.  Endorsements Effective at Inception:

TECH 404 (11/12) and ILF 0001C (04/16)

Date:  3/16/2018

Authorized Company Representative

Policy Number:  TEC0002639

RLI Insurance Company
# Technology Professionals Policy™

**THIS POLICY CONTAINS BOTH LIABILITY AND LOSS COVERAGE. INSURING CLAUSES 1., 2., 3. AND 4. ARE PROVIDED ON A CLAIMS MADE AND REPORTED BASIS. CLAIM EXPENSES SHALL REDUCE THE APPLICABLE LIMIT OF LIABILITY. INSURING CLAUSES 5., 6., 7. AND 8. ARE PROVIDED FOR LOSS OCCURRING DURING THE POLICY PERIOD. ALL PAYMENTS UNDER THIS POLICY SHALL REDUCE THE APPLICABLE LIMIT.**

In consideration of the payment of the premium, and in reliance upon the statements made to the Insurer in the Application forming a part hereof and its attachments and the material incorporated therein, RLI Insurance Company, herein called the "Insurer," and the Insured agree as follows:

## I.  INSURING CLAUSES

### 1.  Technology Services Liability Coverage

If Insuring Clause 1. Technology Services Liability Coverage is purchased pursuant to Item 3. a. of the Declarations, the Insurer will pay on behalf of the **Insured**, those sums which the **Insured** is legally obligated to pay as **Damages** and **Claim Expenses** as a result of any **Claim** first made against the **Insured** during the **Policy Period** and reported in writing to the Insurer as soon as practicable during the **Policy Period** or the Extended Claims Reporting Period (if applicable), for any **Wrongful Act** in the performance or failure to perform **Technology Services**, including a **Wrongful Act** resulting in **Personal Injury**, that first occurred on or after the **Retroactive Date**. However, this Insuring Clause 1. shall not apply to that portion of any **Claim** which would be covered under Insuring Clauses 2. or 4. whether or not such Insuring Clauses were purchased.

### 2.  Enterprise Privacy Liability Coverage

If Insuring Clause 2. Enterprise Privacy Liability Coverage is purchased pursuant to Item 3. b. of the Declarations, the Insurer will pay on behalf of the **Insured**, those sums which the **Insured** is legally obligated to pay as **Damages** and **Claim Expenses** as a result of any **Claim** first made against the **Insured** during the **Policy Period** and reported in writing to the Insurer as soon as practicable during the **Policy Period** or the Extended Claims Reporting Period (if applicable), for any **Privacy Breach** that first occurred on or after the **Retroactive Date**.

### 3.  Electronic Media Liability Coverage

If Insuring Clause 3. Electronic Media Liability Coverage is purchased pursuant to Item 3. c. of the Declarations, the Insurer will pay on behalf of the **Insured**, those sums which the **Insured** is legally obligated to pay as **Damages** and **Claim Expenses** as a result of any **Claim** first made against the **Insured** during the **Policy Period** and reported in writing to the Insurer as soon as practicable during the **Policy Period** or the Extended Claims Reporting Period (if applicable), for any **Electronic Media Peril** that first occurred on or after the **Retroactive Date**.

### 4.  Network Security Liability Coverage

If Insuring Clause 4. Network Security Liability Coverage is purchased pursuant to Item 3. d. of the Declarations, the Insurer will pay on behalf of the **Insured**, those sums which the **Insured** is legally obligated to pay as **Damages** and **Claim Expenses** as a result of any **Claim** first made against the **Insured** during the **Policy Period** and reported in writing to the Insurer as soon as practicable during the **Policy Period** or the Extended Claims Reporting Period (if applicable), for any **Network Security Breach** that first occurred on or after the **Retroactive Date**.

### 5.  Crisis Management Loss Coverage

If Insuring Clause 5. Crisis Management Loss Coverage is purchased pursuant to Item 3. e. of the Declarations, the Insurer will indemnify the **Insured Entity** for **Crisis Management Expenses**, that are the direct result of a **Network Security Breach** or **Privacy Breach** that first occurred during the **Policy Period**, provided such **Network Security Breach** or **Privacy Breach** is reported in accordance with Condition 4. c. of this Policy.

Insured

6. **Network Interruption Business Income & Extra Expense Loss Coverage**

If Insuring Clause 6. Network Interruption Business Income & Extra Expense Loss Coverage is purchased pursuant to Item 3. f. of the Declarations, the Insurer will indemnify the **Insured Entity** for **Network Interruption Business Income & Extra Expense Loss** (including Service **Provider Network Interruption Business Income & Extra Expense Loss**, if applicable), incurred by the **Insured Entity** during the **Period of Recovery** (or **Extended Interruption Period**, if applicable), and exceeding the **Waiting Period**, that is the direct result of a **Network Interruption** that first occurred during the **Policy Period**, which is directly caused by a **Network Security Breach** during the **Policy Period**, provided the **Network Interruption** is reported in accordance with Condition 4. c. of this Policy.

7. **Data Loss Coverage**

If Insuring Clause 7. Data Loss Coverage is purchased pursuant to Item 3. g. of the Declarations, the Insurer will indemnify the **Insured Entity** for **Data Loss**, that is the direct result of a **Network Security Breach** that first occurred during the **Policy Period**, which directly results in the **Corruption** of a **Data Asset** that first occurred during the **Policy Period**, provided such **Corruption** of a **Data Asset** is reported in accordance with Condition 4. c. of this Policy.

8. **Cyber Extortion Loss Coverage**

If Insuring Clause 8. Cyber Extortion Loss Coverage is purchased pursuant to Item 3. h. of the Declarations, the Insurer will indemnify the **Insured Entity** for **Cyber Extortion Loss** that is the direct result of a **Cyber Extortion Threat** that first occurred during the **Policy Period**, and is reported in accordance with Condition 4. c. of this Policy.

## II. DEFINITIONS

When used in this Policy:

"**Application Service Provider**" means the deployment, management, operation, or maintenance of packaged software applications for others.

"**Bodily Injury**" means:

    a. bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time; and,

    b. **Bodily Injury** also means mental injury, mental anguish, emotional distress, pain and suffering, or shock.

"**Breach Notification Law**" means any local, state, federal or foreign statute or regulation requiring notice to individuals whose **Personal Information** was, or is reasonably likely to have been accessed or acquired by an unauthorized party.

"**Claim**" means:

    a. a written demand for money or services, the threat of legal action, including injunctive or declaratory relief, service of suit or institution of arbitration proceedings, received by an **Insured**;

    b. with respect to Insuring Clauses 2. or 4. of this Policy only, any **Regulatory Action**; or

    c. a written request or agreement to toll or waive the statute of limitations relating to a potential **Claim**.

"**Claim Expenses**" means:

    a. reasonable and necessary attorney's fees, expert witness fees and other reasonable and necessary fees and costs incurred by the Insurer, or by the **Insured** with the Insurer's prior written consent, in the investigation and defense of covered **Claims**; and

    b. premiums for any appeal bond, attachment bond or similar bond in covered **Claims**, provided the Insurer shall have no obligation to apply for or furnish such bond.

However, **Claim Expenses** shall not mean or include salaries, wages or benefits of employees, directors or officers of the **Insured** or the Insurer, overhead costs, or any expenses incurred by the **Insured** in assisting or cooperating with the Insurer.

Insured

"**Computer Services**" means the development, installation, distribution, licensing, marketing, or sale of any computer or telecommunications hardware or software, or any maintenance or repair performed in connection with any computer or telecommunications hardware or software.

"**Corruption**" means intentional and malicious alteration, destruction, damage or deletion.

"**Credit Monitoring Expenses**" means reasonable and necessary expenses incurred by the **Insured Entity** within twelve (12) months after the expiration of the **Policy Period**, with the Insurer's prior written consent, for providing up to twelve (12) months credit monitoring services to those individuals whose **Personal Information** was compromised as a direct result of a **Network Security Breach** or **Privacy Breach**. Such expenses must be incurred for the purposes of mitigating a **Claim** with respect to Insuring Clauses 2., 4. or 5., of this Policy.

"**Crisis Management Expenses**" means:

    a.  reasonable and necessary expenses incurred by the **Insured Entity**, with the Insurer's prior written consent, for a public relations firm or law firm to communicate with the general public in order to mitigate the reputational damage of the **Insured Entity** directly resulting from a **Network Security Breach** or **Privacy Breach**;

    b.  **Notification Expenses**;

    c.  **Credit Monitoring Expenses**; and

    d.  **Forensic Expenses**.

"**Cyber Extortion Loss**" means:

    a.  monies or other valuable consideration, the value of which is to be determined by the Insurer in its absolute and sole discretion, demanded in conjunction with a **Cyber Extortion Threat**, and paid by the **Insured Entity**, with the Insurer's prior written consent, for the purpose of terminating such **Cyber Extortion Threat**;

    b.  reasonable and necessary expenses incurred by the **Insured Entity**, with the Insurer's prior written consent:

        i.  to investigate and respond to a **Cyber Extortion Threat**; and

        ii.  for a third party security consultant to prevent or terminate a **Cyber Extortion Threat**;

provided, however, that Cyber Extortion Loss shall not exceed the Loss covered under this Policy that the Insured Entity reasonably would have incurred if it failed to terminate the **Cyber Extortion Threat** and Cyber Extortion Loss shall not mean or include overhead costs, or salaries, wages or benefits of employees, directors or officers of the **Insured**.

"**Cyber Extortion Threat**" means a credible threat or series of related threats, by anyone other than any principal, partner, officer or director of the **Insured Entity** or someone induced or assisted by any principal, partner, officer or director of the **Insured Entity**, to breach **Security** and:

    a.  restrict or hinder access to the **Insured's Computer System**, including the threat to launch a **Denial of Service Attack**;

    b.  access, release, disseminate or destroy **Private Information** residing on the **Insured's Computer System**;

    c.  corrupt, alter, steal, destroy, delete or damage a **Data Asset** or the **Insured's Computer System**; or

    d.  interrupt or suspend the **Insured's Computer System**,

unless monies or other valuable consideration is paid by the **Insured Entity**.

"**Damages**" means any monetary judgment or award the Insured is legally obligated to pay, or a settlement negotiated with the consent of the **Insured** and the **Insurer**, including pre/post-judgment interest on a covered judgment, punitive or exemplary damages (where insurable by law, and the enforceability of such coverage shall be governed by such applicable law that most favors coverage for punitive or exemplary damages), but shall not mean or include any of the following:

a.  civil, criminal, administrative or regulatory fines or penalties, taxes, or trebled or other multiple damages;

b.  the return, restitution, disgorgement, offset, reduction or dispute over any fees, profits, deposits, expenses, costs, or commissions charged or collected by the **Insured**;

c.  the cost to comply with any injunctive or other non-monetary or declaratory relief or any agreement to provide such relief;

d.  any monetary judgment or award, or settlement, with respect to a **Regulatory Action**, including without limitation any remedial funds, compensatory awards, or costs related to the establishment, implementation, management or oversight of an information security program or privacy law compliance program; or

e.  any matters deemed uninsurable by law.

"**Data Asset**" means any electronic data existing in the **Insured's Computer System** that is subject to regular back up procedures, including but not limited to any databases, software or trade secrets stored thereon.

"**Data Loss**" means the lesser of: (a) reasonable and necessary costs to replace, restore or recollect a **Data Asset** to the level or condition in which it existed immediately prior to the **Network Security Breach**, or (b) if such **Data Asset** cannot reasonably be replaced, restored or recollected, reasonable and necessary costs incurred by the **Insured Entity** to reach this determination. **Data Loss** does not mean or include, and there shall be no coverage under Insuring Clause 7. for:

a.  costs or expenses incurred by the **Insured Entity** to identify or remediate software program errors or vulnerabilities or to update, replace, restore, gather, assemble, reproduce, recollect or enhance a **Data Asset** to a level or condition beyond that which existed prior to a **Network Security Breach**;

b.  costs or expenses to research or develop any **Data Asset**, including but not limited to trade secrets or other proprietary information;

c.  the monetary value of, or profits, royalties, or lost market share related to, a **Data Asset**, including but not limited to trade secrets or other proprietary information or any other amount pertaining to the value of the **Data Asset**;

d.  loss arising out of liability to third parties;

e.  overhead costs, or salaries, wages or benefits of employees, directors or officers of the **Insured**; or

f.  legal costs or legal expenses of any type.

"**Deductible**" means the deductible set forth in Item 7. of the Declarations.

"**Denial of Service Attack**" means an attack by someone, other than any principal, partner, officer or director of the **Insured Entity** or someone induced or assisted by any principal, partner, officer or director of the **Insured Entity**, intended to overwhelm the capacity of the **Insured's Computer System** by sending an excessive volume of electronic data to such computer system in order to prevent authorized access to such computer system.

"**Electronic Content**" means any information in electronic form that is created, owned or licensed by the **Insured Entity** for its own business use; provided, however, that **Electronic Content** does not include or mean any:

a.  information incorporated into or otherwise a part of the **Technology Services** or products of the **Insured**;

b.  information, advertising or content created, licensed or provided by the **Insured** to a client, customer or other person or entity; or

c.  information, advertisement or content (including any copies thereof) that is also displayed or published in any medium (including without limitation, newspaper, magazine, television, radio or a third party internet site) other than the **Insured's Internet Site**.

"**Electronic Data Processing**" means the conversion of data from the source material of others into a form of media for processing on electronic data processing machines and the performance of subsequent processing of such data, including database administration, for others.

Insured

"**Electronic Data Processing Consulting**" means the performance of feasibility studies, training of others, giving opinions, staffing services or recommendations regarding the electronic data processing objectives and needs of others.

"**Electronic Media Peril**" means the display of **Electronic Content** on the **Insured's Internet Site** that directly results in any of the following:

    a.   libel, slander or other defamatory or disparaging material;

    b.   violation of an individual's right of privacy;

    c.   plagiarism or misappropriation of ideas under an implied contract;

    d.   infringement of copyright, trademark, trade name, trade dress, title, slogan, service mark or service name; or

    e.   domain name infringement or improper deep-linking or framing.

"**Extended Income Loss**" means Income Loss during the **Extended Interruption Period**.

"**Extended Interruption Period**" begins on the date and time the **Period of Recovery** ends, and terminates on the date and time the **Network Interruption** either ends or would have ended had the **Insured Entity** or **Service Provider** (if applicable) exercised due diligence and dispatch; provided, however, that in no event shall the **Extended Interruption Period** exceed thirty (30) days beyond the **Period of Recovery**.

"**Extra Expense**" means the reasonable and necessary expenses incurred during the **Period of Recovery** by the **Insured Entity**, with the Insurer's prior written consent:

    a.   to reduce **Income Loss** provided that such expenses are over and above the total reasonable and necessary expenses that the **Insured** would have incurred had no **Network Interruption** occurred and do not exceed the amount by which the **Income Loss** covered under this Policy is thereby reduced;

    b.   to minimize or shorten the duration of a **Network Interruption** and continue the **Insured Entity's** business, which would not have been incurred had no **Network Interruption** occurred; and

provided that **Extra Expense** shall not mean or include, and there shall be no coverage under Insuring Clause 6. for: expenses incurred by the **Insured** to update, upgrade, enhance or replace the **Insured's Computer System** to a level beyond that which existed prior to the **Network Interruption**; penalties of any nature, however denominated, arising by contract; or **Data Loss**, **Crisis Management Expenses** or **Cyber Extortion Loss**.

"**Forensic Expenses**" means the reasonable and necessary expenses incurred by the **Insured Entity** to investigate the cause of a **Network Security Breach** or **Privacy Breach**.

"**Identity Theft**" shall mean the theft or unauthorized copying of **Personal Information** of an individual, and use of such **Personal Information** to open new financial accounts for the purpose of fraudulently impersonating such individual, including without limitation, payment card accounts, bank accounts, loan accounts, health insurance accounts and insurance accounts.

"**Income Loss**" means the net profit (or net loss) before income taxes that the **Insured Entity** is prevented from earning during the **Period of Recovery** (or **Extended Interruption Period**, if applicable) as a direct result of a **Network Interruption**.

**Income Loss** shall be reduced to the extent the **Insured Entity** or **Service Provider** (if applicable) should have been able, with reasonable speed, effort and due diligence, to reduce or limit such **Network Interruption** or **Income Loss**, or conduct its business operations by other means. In determining **Income Loss**, due consideration shall be given to the prior experience of the **Insured Entity's** business operations before the beginning of the **Period of Recovery** and to the probable business operations the **Insured Entity** could have performed had no **Network Interruption** occurred.

"**Insured**" means the following:

    a.   the **Named Insured(s)** designated in Item 1. of the Declarations;

    b.   any **Subsidiary(ies)**;

Insured

c. any current or former partner, principal, member, executive, officer or director of the **Insured Entity**, but solely with respect to the performance of his or her duties as such on behalf of the **Insured Entity** that are within the scope of his or her position;

d. any current or former employee(s) or independent contractor(s) of the **Insured Entity**, but solely with respect to the performance of his or her duties on behalf of the **Insured Entity** that are within the scope of his or her employment or contract;

e. solely as respects Insuring Clauses 1., 2., 3. and 4., the heirs, executors, administrators, assigns and legal representatives of each of the above Insured(s) in the event of the **Insured's** death, incapacity or bankruptcy; and

f. solely as respects Insuring Clauses 1., 2., 3. and 4., the lawful spouse or domestic partner (whether such stature is derived by reason of statutory law, common law, or any other applicable law of any jurisdiction in the world) of any individual that qualifies as an **Insured** pursuant to subsections c. or d. of this definition, but only with respect to **Claims** arising solely out of his or her capacity as the spouse or domestic partner of such **Insured**, including such **Claims** that seek damages recoverable from marital community property, property jointly held by such **Insured** and the spouse or domestic partner; or property transferred from such **Insured** to the spouse or domestic partner; provided, however, that this extension shall not afford coverage for any acts or omissions of the spouse or domestic partner.

"**Insured Entity**" means:

a. the **Named Insured(s)** designated in Item 1. of the Declarations; and

b. any **Subsidiary(ies)**.

"**Insured's**" means to, of, or by the **Insured**.

"**Insured's Computer System**" means any computer hardware, software or firmware, and components thereof including data stored thereon, that is owned or leased by the **Insured Entity**, and is under the direct operational control of the **Insured Entity** or a **Service Provider** for or on behalf of the **Insured Entity**.

"**Insured's Internet Site**" means any internet website accessible by the general public that is hosted and controlled by the **Insured Entity** or **Service Provider** (if applicable) including weblogs, bulletin boards, message boards, or online forums that are part of the **Insured Entity's** internet website; provided, however, the **Insured's Internet Site** shall not include any website hosted or controlled by any **Insured** for or on behalf of its clients, customers or others.

"**Insuring Clause 5-8 Sublimit**" means the Insurer's maximum liability under Insuring Clauses 5., 6., 7. and 8. of this Policy.

"**Loss**" means **Damages, Claim Expenses, Data Loss, Network Interruption Business Income & Extra Expense Loss, Service Provider Network Interruption Business Income & Extra Expense Loss, Cyber Extortion Loss** and **Crisis Management Expenses**.

"**Malicious Code**" means any unauthorized and corrupting self-replicating or self-propagating code, script designed to disperse or copy itself, or other distributed attack (such as a virus, Trojan horse, worm, malware or other similar harmful software program, code or script) which is consciously introduced into or targeted at the **Insured's Computer System**. This definition does not include any self-replicating or self-propagating code, script designed to disperse or copy itself, or other distributed attack which is not consciously introduced into or targeted at the **Insured's Computer System**, regardless of its form and whether it comprises a virus, Trojan horse, worm, malware or other similar harmful software program, code or script.

"**Named Insured**" means the company named in Item 1. of the Declarations.

"**Network Interruption Business Income & Extra Expense Loss**" means: **Income Loss** and **Extra Expense** caused by a **Network Interruption. Network Interruption Business Income & Extra Expense Loss** also means **Extended Income Loss**, but only if **Income Loss** and **Extra Expense** during the **Period of Recovery** exceeds the **Deductible. Network Interruption Business Income & Extra Expense Loss** does not mean or include any of the following:

a. loss arising out of liability to third parties;

b. legal costs or legal expenses of any type;

    c.   loss incurred as a result of unfavorable business conditions; or

    d.   loss of market or any other consequential loss.

"**Network Interruption**" means the actual and measurable interruption or suspension of the **Insured's Computer System**.

"**Network Security Breach**" means:

    a.   the failure or inability of **Security** to prevent:

       i.   unauthorized access to or unauthorized use of the **Insured's Computer System**;

       ii.  the transmission of **Malicious Code** to or from the **Insured's Computer System**;

       iii.  the theft or unauthorized copying of data on the **Insured's Computer System**;

       iv.  the infection or implantation of **Malicious Code** on the **Insured's Computer System**;

       v.   a **Denial of Service Attack**; or

       vi.  **Corruption** to electronic data on the **Insured's Computer System**; or

    b.   the failure or inability of **Security** to prevent the theft of data as a result of the physical theft, by a person other than an **Insured**, of the **Insured's** computer hardware or storage media from a premises occupied and controlled by the **Insured Entity**; or

    c.   the theft of data as a result of the physical theft of a laptop computer or other hardware provided by the **Insured Entity** to an **Insured**.

"**Notification Expenses**" means reasonable and necessary expenses incurred by the **Insured Entity**, with the Insurer's prior written consent, for purposes of determining whether any **Breach Notification Law** applies, and assisting the **Insured Entity** to comply with applicable **Breach Notification Laws**. **Notification Expenses** does not mean or include salaries, wages or benefits of employees, directors or officers of the **Insured Entity**.

"**Period of Recovery**" begins on the date and time the **Network Interruption** first occurs, and terminates on the date and time the **Network Interruption** either ends or would have ended had the **Insured Entity** or **Service Provider** (if applicable) exercised due diligence and dispatch; provided, however, that in no event shall the **Period of Recovery** exceed, thirty (30) days.

"**Personal Information**" means any:

    a.   individual's name in combination with any one or more of the following:

       i.   social security number;

       ii.  driver's license number or any other state identification number;

       iii.  non-public medical or healthcare data including protected health information; or

       iv.  any account number, credit or debit card number in combination with any required password, access code or other security code that would permit access to the financial account; or

    b.   non-public personal information as defined in any **Privacy Regulation**.

"**Personal Injury**" means any actual or alleged:

    a.   false arrest, detention or imprisonment;

    b.   wrongful entry or eviction or other invasion of private occupancy;

    c.   malicious prosecution;

d.  libel, slander or other defamatory or disparaging material; or

e.  a publication or an utterance in violation of an individual's right of privacy.

"**Policy Period**" means the period of time specified in Item 2. of the Declarations of this Policy, subject to prior nonrenewal, cancellation or termination. If this period is less than or greater than one year, then the Limits specified in the Declarations shall be the Insurer's maximum limit under each Insuring Clause for the entire period. **Policy Period** does not include any Automatic Extended Claims Reporting Period. If the length of the **Policy Period** is the same as the **Policy Year**, the terms **Policy Period** and **Policy Year** are used interchangeably herein.

"**Policy Year**" means each consecutive twelve (12) months of the **Policy Period** beginning on the effective date shown in the Declarations. However, if a **Policy Year** within a **Policy Period** is modified by an endorsement, then that modified year will be deemed a **Policy Year** for the purposes of determining the Annual Aggregate Limit of Liability.

"**Pollutants**" means any solid, liquid, gaseous or thermal irritant, or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed. **Pollutants** also includes any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi. **Pollutants** also includes any oil or oil products; asbestos or asbestos products; emissions from electric or magnetic or electromagnetic fields; odor; or noise.

"**Privacy Breach**" means the failure by the **Insured** or **Service Provider** to prevent the theft or misappropriation of **Private Information** while in the care, custody or control of an **Insured** or **Service Provider**; or the unintentional violation of the **Insured's** privacy policy that directly results in a violation of a **Privacy Regulation**.

"**Privacy Regulation**" means statutes or regulations regulating the use and protection of **Personal Information** including but not limited to:

a.  Health Insurance Portability and Accountability Act of 1996 (HIPAA) and the rules and regulations promulgated thereunder, as amended;

b.  Gramm-Leach-Bliley Act of 1999 (GLBA) and the rules and regulations promulgated thereunder, as amended;

c.  consumer protection and unfair and deceptive trade practice laws enforced by state Attorneys General or the Federal Trade Commission, including but not limited to Section 5(a) of the Federal Trade Commission Act, 15. U.S.C § 45 (a), as amended;

d.  security breach notification laws that require notice to individuals of the actual or potential theft of their **Personal Information**, including but not limited to the California Security Breach Notification Act of 2003 (CA SB1386), as amended; or

e.  any other state, federal or foreign statute or regulation requiring reasonable **Security** for **Personal Information**, or a privacy policy limiting the sale, disclosure or sharing of **Personal Information** or providing individuals with the right to access or correct **Personal Information**.

"**Private Information**" means any of the following information in the care, custody and control of any **Insured** or **Service Provider** (if applicable):

a.  **Personal Information**; or

b.  confidential or proprietary business information owned by any person or entity other than an **Insured** and expressly identified as confidential or proprietary, which is protected under a written non-disclosure or similar written agreement between such person or entity and the **Insured Entity**.

"**Programming**" means the writing, testing, customization, optimization and installation of computer programs, writing of program documentation and the performance of maintenance on established programs for others; development of custom and packaged software applications for use on computer hardware including mobile devices and websites.

"**Property Damage**" means:

a.  physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

"**Regulatory Action**" means a civil investigative demand or civil request for information, or a civil administrative or regulatory proceeding brought or made by a governmental agency or authority against the **Insured**, which alleges violation of a **Privacy Regulation**, and which may reasonably be expected to give rise to a civil suit covered under Insuring Clauses 2. or 4. of this Policy. **Regulatory Action** shall not mean or include any criminal demands, requests or proceedings.

"**Related Claims**" means all Claims for **Network Security Breaches, Privacy Breaches, Electronic Media Perils** or **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

"**Retroactive Date**" means the applicable retroactive date(s) set forth in Item 9. of the Declarations.

"**Security**" means the technical and physical controls, policies and procedures, and computer or network hardware or software intended to prevent unauthorized access to or unauthorized use of the **Insured's Computer System**, or data stored thereon, by a person.

"**Service Provider**" means any company hosting computer hardware, software or firmware, or storing or processing **Personal Information**, for or on behalf of the **Insured Entity** pursuant to a written contract with the **Insured Entity** that requires such **Service Provider** to indemnify the **Insured** for all **Network Security Breaches, Privacy Breaches** and acts, errors, omissions, neglect or breaches of duty in the display of **Electronic Content**.

"**Service Provider Network Interruption Business Income & Extra Expense Loss**" means covered **Network Interruption Business Income & Extra Expense Loss** that was the direct result of a **Network Interruption** caused by a **Network Security Breach** with respect to the **Security** of a **Service Provider**, and such **Network Interruption, Network Security Breach** and **Network Interruption Business Income & Extra Expense Loss** would have been covered under this Policy had the **Service Provider** been an **Insured**.

"**Subsidiary**" means any entity of which fifty percent (50%) or more of the voting securities is owned by the **Named Insured** and is listed as a **Subsidiary** in the Application to this Policy as of the inception date of the Policy, or named as a **Subsidiary** by endorsement to this Policy.

"**Systems Analysis/Software Design**" means the analysis of the information needs of others, analysis of proposed or existing electronic data processing systems and computer networks, recommending, planning and designing of electronic data processing procedures for others.

"**Technology Services**" means **Application Service Provider, Computer Services, Electronic Data Processing, Electronic Data Processing Consulting, Programming, System Analysis/Software Design,** or **Web Portal Services**, provided, however, that **Technology Services** are performed for others for a fee by the **Insured** or by any person or entity acting on behalf of the **Insured**.

"**Waiting Period**" means the period of time that begins when the **Period of Recovery** begins and ends when the number of hours identified as **Waiting Period** as set forth in Item 8. of the Declarations, elapses. A **Waiting Period** shall apply to each **Period of Recovery**.

"**Web Portal Services**" means providing access to data and software applications that are privately owned by the **Insured Entity's** customers or separately by the **Insured's** customers.

"**Wrongful Act**" means any actual or alleged act, error, omission, neglect or breach of duty committed by any **Insured** or by any person for whom the **Insured** is legally liable.

## III. EXCLUSIONS

1. The Insurer shall not be liable to make any payment for **Loss** or **Claim** based upon, arising out of, directly or indirectly resulting from, or in consequence of:

   a. any actual or alleged dispute or obligation for any fees, expenses, or costs paid to or charged by the **Insured**, including but not limited to licensing fees, royalties, contingent compensation or the amount or timeliness of such payments;

   b. any actual or alleged discrimination on any basis, by the **Insured**, including without limitation race, creed, color, religion, ethnic background, national origin, age, handicap, disability, gender, sexual orientation or pregnancy;

   c. any actual or alleged **Bodily Injury** or **Property Damage**; provided, however, this exclusion shall not apply to mental injury, mental anguish, emotional distress, pain and suffering, or shock with respect to any otherwise covered **Claim** under Insuring Clause 3. for an **Electronic Media Peril** as defined in subsections a. and b. of that definition;

   d. any actual or alleged **Wrongful Act** committed by an **Insured** where the **Claim** is brought by another **Insured** (or shareholder, of the **Insured Entity**), including but not limited to, derivative suits;

   e. any actual or alleged uploading, downloading, piracy or file-sharing of digitized media, music, photos, movies, software or video games;

   f. any actual or alleged **Personal Injury**; provided, however, this exclusion shall not apply with respect to any otherwise covered **Claim** under:

      i. Insuring Clause 1. for **Technology Services**; or

      ii. Insuring Clause 2. for a **Privacy Breach**; or

      iii. Insuring Clause 3. for an **Electronic Media Peril** as defined in subsections a. and b. of that definition;

   g. any actual or alleged contractual liability or obligation, or any breach of warranty, guarantee, promise or contract, including but not limited to liability of others assumed by the **Insured** under any warranty, guarantee, promise or contract, unless such liability would have attached to the **Insured** by law even in the absence of such warranty, guarantee, promise or contract;

   h. any actual or alleged:

      i. price fixing, restraint of trade, monopolization, by the **Insured**, including violations of the Sherman Anti-Trust Act, the Clayton Act, or any similar provision of any federal, state, or local statutory law or common law anywhere in the world;

      ii. wrongful employment practice, by the **Insured**, including, but not limited to, any harassment, hostile work environment, wrongful dismissal, discharge or termination, retaliation, wrongful disciplinary action, deprivation of career opportunity, failure to employ or promote, inadequate work place policies or procedures, or negligent evaluation of employees;

      iii. unfair trade practices or violation of consumer protection laws; provided, however that this exclusion shall not apply to any otherwise covered **Claim** or **Loss** under Insuring Clauses 2., 4. or 5.;

      iv. violation, by the **Insured**, of the Employee Retirement Income Security Act of 1974, as amended; the Securities Act of 1933, as amended; the Securities Exchange Act of 1934, as amended; or any state Blue Sky or securities law or similar state, foreign or federal statute, including any regulation or order issued pursuant to any of the foregoing statutes;

      v. infringement, misappropriation or violation of any patent, copyright, trademark, service mark, trade dress or trade name; provided, however, that this exclusion shall not apply to any otherwise covered **Claim** under Insuring Clauses 1. or 3. for infringement of a copyright, trademark, trade name, trade dress, title, slogan, service mark or service name;

Insured

vi.  copying, infringement, misappropriation, display or publication of any trade secret; provided, however, this exclusion shall not apply to any otherwise covered **Claim** under Insuring Clauses 2. or 4. arising out of the misappropriation of a trade secret by any individual who is not an **Insured** or a former employee, shareholder, member, independent contractor, director, officer, partner or trustee of an **Insured**;

i.  any actual or alleged seizure, confiscation, destruction or nationalization of the **Insured's Computer System** or any **Data Asset** by or on behalf of any governmental or public authority;

j.  any actual or alleged inaccurate, inadequate or incomplete description of the price of goods, products or services, or of the authenticity of any goods, products or services, or the failure of any goods, products or services to conform with any represented quality or performance;

k.  any actual or alleged wear and tear or gradual deterioration of the **Insured's Computer System** or any physical computer hardware of the **Insured's Computer System** or any loss of value to any software application or **Data Asset**, including same becoming outdated or outmoded;

l.  any actual or alleged interruption, suspension, failure or outage of any component of the internet, including without limitation any hardware or software infrastructure supporting the internet; unless such hardware or software infrastructure was under the **Insured Entity's** direct operational control;

m.  any actual or alleged injury or damage which would have not occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants**, including but not limited to asbestos, at any time;

n.  any actual or alleged request, demand, or order that any **Insured** or others, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**;

o.  any actual or alleged fire, smoke, explosion, lightning, wind, water, flood, earthquake, volcanic eruption, tidal wave, landslide, hail, act of God or other physical event, however caused;

p.  any actual or alleged strike or similar action, war, invasion, act of foreign enemy, hostilities or warlike operations (whether declared or not), civil war, mutiny, civil commotion assuming the proportions of or amounting to a popular rising, military rising, insurrection, rebellion, revolution, military or usurped power, or any action taken to hinder or defend against these actions;

q.  any actual or alleged satellite, electrical, mechanical or telecommunications failure including any electrical power interruption, surge, brownout or blackout; provided that this exclusion shall not apply to any otherwise covered **Claim** under Insuring Clause 4. arising out of a **Network Security Breach** that was solely the result of telecommunications infrastructure under the **Insured Entity's** direct operational control;

r.  any actual or alleged costs or expenses incurred by any **Insured** to recall, repair, withdraw, replace, upgrade, supplement or remove any **Electronic Content** or other information, content or media containing such **Electronic Content**;

s.  any actual or alleged material deficiency in the Insured Entity's **Security** of which any **Insured** was aware prior to the effective date of this Policy or any prior Policy of which this Policy is a renewal or a replacement;

t.  any actual or alleged **Network Security Breach, Privacy Breach, Electronic Media Peril, Wrongful Act, Corruption of a Data Asset, Network Interruption, or Cyber Extortion Threat**, by a **Subsidiary** or its employees, independent contractors, partners, members, executives, officers or directors, committed or occurring during any time that a **Subsidiary** is not owned by the **Insured Entity**;

u.  any actual or alleged **Network Security Breach, Privacy Breach, Electronic Media Peril, Wrongful Act, Corruption of a Data Asset, Network Interruption or Cyber Extortion Threat** committed or occurring prior to the effective date of this Policy, or any prior policy issued by the Insurer of which this Policy is a renewal, if any **Insured** knew or reasonably should have foreseen that the **Network Security Breach, Privacy Breach, Electronic Media Peril, Wrongful Act, Corruption** of a Data Asset, **Network Interruption** or **Cyber Extortion Threat** would lead to a **Claim** or **Loss**;

v.   any actual or alleged interrelated series of **Network Security Breaches, Privacy Breaches, Electronic Media Perils, Wrongful Acts, Corruptions of a Data Asset, Network Interruptions** or **Cyber Extortion Threats** where the earliest **Network Security Breach, Privacy Breach, Electronic Media Peril, Wrongful Act, Corruption of a Data Asset, Network Interruption** or **Cyber Extortion Threat** in the series first occurred prior to the inception of the Policy; or

w.   any actual or alleged self-replicating or self-propagating code, script designed to disperse or copy itself, or other distributed attack which is not consciously introduced into or targeted at the **Insured's Computer System**, regardless of its form and whether it comprises a virus, Trojan horse, worm, malware or other malicious software program, code or script.

2.   The Insurer shall not be liable for **Loss**:

a.   with respect to Insuring Clauses 1., 2., 3. and 4. on account of any **Claim** based upon, arising out of, directly or indirectly resulting from, or in consequence of any actual or alleged dishonest, fraudulent, criminal, malicious or intentional act, error or omission, or any intentional or knowing violation of the law by, or with the knowledge of, any principal, partner, officer or director of the **Insured Entity**, or any actual or alleged gaining of any profit, remuneration or financial advantage to which any **Insured** was not legally entitled; provided, that this exclusion shall not apply to any other **Insured** who did not participate in, ratify, acquiesce in, or remain passive after gaining personal knowledge of, any such act, error or omission; and provided further that this exclusion shall not apply to **Claim Expenses** paid on behalf of the **Insured** to defend any such **Claim** until there is a judgment against, binding arbitration against, adverse admission by, a finding of fact against, or plea of no contest by any principal, partner, officer or director of the **Insured Entity**, at which time the **Insured Entity** shall reimburse the Insurer for any **Claim Expenses** paid by the Insurer; or

b.   with respect to Insuring Clauses 5., 6., 7. and 8. based upon, arising out of, directly or indirectly resulting from, or in consequence of any actual or alleged dishonest, fraudulent, criminal, malicious or intentional act, error or omission, or any intentional or knowing violation of the law by, or with the knowledge of any principal, partner, officer or director of the **Insured Entity**, or any actual or alleged gaining of any profit, remuneration or financial advantage to which any principal, partner, officer or director of the **Insured Entity** was not legally entitled.

3.   The Insurer shall not be liable for **Loss** on account of any **Claim** brought by or on behalf of:

a.   any **Insured** against any other **Insured**; provided, however, with respect to Insuring Clause 2. only, this exclusion shall not apply to an otherwise covered **Claim** brought by or on behalf of an independent contractor or an employee of the **Insured Entity** alleging a **Privacy Violation** involving their **Personal Information**, provided also such independent contractor or employee is not involved in any manner with the unauthorized access to, theft of or copying of such **Personal Information**;

b.   the Federal Trade Commission, the Federal Communications Commission, or any other federal, state, or local or foreign government agency or regulator; provided, however that this exclusion shall not apply to **Claim Expenses** incurred by the **Insured** as the result of an otherwise covered **Regulatory Action** under Insuring Clauses 2. or 4.;

c.   any intellectual property licensing or royalty body, organization or trade group, including but not limited to Broadcast Music, Inc., the American Society of Composers, Authors and Publishers, the Society of European Stage Authors and Composers, the Recording Industry Association of America and the Motion Picture Association of America;

d.   any governmental authority for testing, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**;

e.   any organization or business enterprise which is not an **Insured** but which either owns or has an ownership interest greater than ten percent (10%) in any **Insured**;

f.   any organization or business enterprise which is not an **Insured** but which controls, operates or manages any **Insured**; or

g.   any **Insured** for or on behalf of any organization or business enterprise which is not an **Insured** but which any **Insured** controls, operates or manages.

4.   With respect to Insuring Clauses 1., 2., 3. and 4. only, the Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any of the **Insureds** based upon, arising out of, directly or indirectly resulting from, or in consequence of:

a.  any actual or alleged unsolicited electronic faxes, emails, telephone calls or unsolicited communications, including but not limited to unsolicited electronic messages, chat room postings, bulletin board postings, newsgroup postings, "pop-up" or "pop-under" internet advertising or fax-blasting, direct mailing or telemarketing, or **Claims** alleging violations of the Telephone Consumer Protection Act, of 1991, as amended, the CAN-SPAM Act of 2003, as amended, and any other federal, foreign or state anti-spam statutes, or federal, foreign or state statue, law or regulation relating to a person's right to privacy;

b.  any actual or alleged unauthorized or illegal collection of **Personal Information**, including but not limited to the collection of **Personal Information** using cookies, spyware, or other **Malicious Code**, or the failure to provide adequate notice that **Personal Information** is being collected; or

c.  Section 605 (requirements relating to information contained in consumer reports) or 616 (civil liability for willful noncompliance) of the Fair Credit Reporting Act, as amended, or any other similar federal, state or local laws or regulations, including but not limited to any laws or regulations requiring truncation of payment card numbers on, or the removal of the expiration date from, payment card receipts.

## IV. CONDITIONS

1.  **Limits of Liability and Deductible**

    a.  **Limits of Liability**

        The amount stated in Item 4. of the Declarations for this Policy will be the maximum Annual Aggregate Limit of Liability of the Insurer under this Policy for all **Loss** from all **Claims, Network Interruptions, Network Security Breaches, Privacy Breaches, Electronic Media Perils, Wrongful Acts, Data Losses** or **Cyber Extortion Threats**, for which this Policy provides coverage, regardless of the time of payment by the Insurer.

        All **Loss** is part of and not in addition to the amount stated in Item 4. of the Declarations for this Policy. Any payment of **Loss** by the Insurer will reduce the amount stated in Item 4. of the Declarations.

        The Limits and Sublimits shown in the Declarations and described herein are the most the Insurer will pay, regardless of the number of **Insureds, Claims,** individuals or entities making **Claims, Network Security Breaches, Privacy Breaches, Electronic Media Perils, Wrongful Acts, Network Interruptions, Data Losses** or **Cyber Extortion Threats.**

        If the amount stated in Item 4. of the Declarations for this Policy is exhausted by the payment of **Loss**, the premium will be fully earned, all obligations of the Insurer under this Policy will be completely fulfilled and exhausted, and the Insurer will have no further obligations of any kind or nature whatsoever under this Policy.

    b.  **Deductible**

        The Insurer's liability with respect to all **Loss** under this Policy, shall only apply to that part of **Loss** which is excess of the **Deductible** set forth in Item 7. of the Declarations for the Policy. As a condition precedent to the Insurer's liability under this Policy, the **Insured** shall pay the **Deductible** set forth in Item 7. of the Declarations for the Policy and the **Deductible** shall be borne by the **Insured** uninsured and at its own risk.

        A separate **Deductible** shall apply to each **Loss** under this Policy resulting from each **Claim, Network Interruption, Network Security Breach, Privacy Breach** or **Cyber Extortion Threat**; however, a single **Deductible** shall apply to all **Loss** resulting from any **Claim, Network Interruption, Network Security Breach, Privacy Breach** or **Cyber Extortion Threat** for any **Loss** that has as a common nexus any fact, circumstance, situation, event, transaction or cause, or series of related facts, circumstances, situations, events, transactions or causes.

2.  **Sublimits and Non-stacking of Limits**

    The amounts stated in Item 5. of the Declarations for the Policy as Sublimits of Liability are part of, and not in addition to, the maximum Annual Aggregate Limit of Liability stated in Item 4. of the Declarations.

    For **Claims** arising under Insuring Clauses 1., 2., 3. or 4. of this Policy, the corresponding Sublimit for each **Claim** specified in the first column in Items 5. a. – d. of the Declarations, shall be the Insurer's maximum liability for **Damages** and **Claim**

Expenses for each **Claim** during the **Policy Year**, and subject to the corresponding Sublimit for each **Policy Year** Aggregate specified in the second column in Items 5. a. - d., of the Declarations, which are part of and not in addition to the maximum Annual Aggregate Limit of Liability stated in Item 4. of the Declarations.

Each payment made under Insuring Clauses 5., 6., 7. or 8. of this Policy shall reduce the **Insuring Clause 5-8 Sublimit** stated in Item 6. of the Declarations for the Policy and the maximum Annual Aggregate Limit of Liability stated in Item 4. of the Declarations, or any portion thereof remaining at the time of the payment, until it is exhausted. Upon payment of **Insuring Clause 5-8 Sublimit** stated in Item 6. of the Declarations or exhaustion of the maximum Annual Aggregate Limit of Liability stated in Item 4. of the Declarations, the Insurer shall have no further liability for Insuring Clauses 5., 6., 7. or 8. of the Policy.

If any **Claim** made against an **Insured** or if any **Network Security Breaches**, **Privacy Breaches**, **Electronic Media Perils**, **Network Interruptions**, **Wrongful Acts**, **Data Losses** or **Cyber Extortion Threats**, give(s) rise to coverage both under this Policy and under any other policy(ies) or coverage section(s) issued by the Insurer or any other company of the RLI Insurance Group, the maximum liability of the Insurer and such other RLI Company, combined, under this Policy and all such other policies, combined, for all **Loss**, including **Claim Expenses**, in respect of such **Claim** shall not exceed the largest single available Limit of Liability under any such policy or coverage section, including this Policy.

3.   **Defense and Settlement**

With respect to Insuring Clauses 1., 2., 3. and 4. the Insurer shall have the right and duty to defend any **Claim** covered by this Policy, even if any of the allegations are groundless, false or fraudulent. The Insurer's duty to defend shall cease upon exhaustion of the applicable Sublimit set forth in Item 5. of the Declarations or the aggregate Limit of Liability set forth in Item 4. of the Declarations for this Policy, whichever comes first.

The **Insureds** agree to provide the Insurer with all information, assistance and cooperation which the Insurer reasonably requests and agree that in the event of a **Claim**, **Network Interruption**, **Network Security Breach**, **Privacy Breach**, **Electronic Media Peril**, **Wrongful Act**, **Data Loss**, or **Cyber Extortion Threat**, the **Insureds** will do nothing that shall prejudice the Insurer's position or its potential or actual rights of recovery.

The Insurer may, with the written consent of the **Insureds**, make any settlement of a **Claim** the Insurer deems expedient. If the **Insureds** withhold consent to such settlement, the Insurer's liability for all **Loss** on account of such **Claim** shall not exceed the amount for which the Insurer could have settled such **Claim** plus **Claim Expenses** accrued as of the date such settlement was proposed in writing by the Insurer to the **Insured**.

The **Insureds** agree not to settle or offer to settle any **Claim**, incur any Claim Expenses or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Insurers' prior written consent, which shall not be unreasonably withheld. The Insurer shall not be liable for any settlement, **Claim Expenses**, assumed obligation or admission to which it has not previously consented.

4.   **Notice/Claim Reporting Provisions**

a.   **Notice of Claims**

As a condition precedent to any right of payment with respect to any **Claim**, the **Insured Entity** must give the Insurer written notice of such **Claim** with full details, as soon as practicable after the **Claim** is first made, but no later than sixty (60) days after the expiration or termination of this Policy.

b.   **Notice of Circumstance**

If, during the **Policy Period**:

i.   an **Insured** first becomes aware of a **Network Security Breach**, **Privacy Breach**, **Electronic Media Peril** or **Wrongful Act** which may subsequently give rise to a **Claim**, and

ii.   the **Insured Entity** during the **Policy Period** gives the Insurer written notice of such **Network Security Breach**, **Privacy Breach**, **Electronic Media Peril** or **Wrongful Act** including a description of the **Network Security Breach**, **Privacy Breach**, **Electronic Media Peril** or **Wrongful Act**, the identities of the potential claimants, the consequences which have resulted or may result from such **Network Security Breach**, **Privacy Breach**, **Electronic Media Peril** or **Wrongful Act** and the circumstances by which the **Insured** first became aware of such **Network Security Breach**, **Privacy Breach**, **Electronic Media Peril** or **Wrongful Act**, and

Insured

iii. the **Insured Entity** requests coverage under this Policy for any subsequent **Claim** arising from such **Network Security Breach, Privacy Breach, Electronic Media Peril** or **Wrongful Act**;

then the Insurer will treat any such subsequent **Claim** as if it had been first made during the **Policy Period**.

All **Related Claims** will be treated as a single **Claim** made when the earliest of such **Related Claims** was first made, regardless of whether such date is before or during the **Policy Period**.

c. **Notice of Loss**

With respect to Insuring Clauses 5., 6. and 7. as a condition precedent to coverage under this Policy, the **Insured Entity** must provide written notice to the Insurer of any **Network Interruption, Network Security Breach, Privacy Breach,** or **Corruption of a Data Asset** (as applicable) for which it seeks coverage as soon as practicable during the **Policy Period** but no later than twelve (12) months after the expiration of the **Policy Period**.

With respect to Insuring Clause 8. as a condition precedent to coverage under this Policy, the **Insured Entity** must provide written notice to the Insurer of any **Cyber Extortion Threat** for which it seeks coverage no later than thirty (30) days after the expiration of the **Policy Period**.

d. **Reporting of Claims, Circumstances and Losses**

All notices referenced in 4 a. through c. above must be sent by e-mail at new.claim@rlicorp.com, fax at 1-866-692-6796, or prepaid express courier or certified mail to RLI Insurance Company, Attention: Claim Department, 9025 North Lindbergh Drive, Peoria, Illinois 61615-1431.

5. **Cancellation and Nonrenewal**

This Policy shall terminate at the earliest of the following times:

a. the effective date of termination specified in a prior written notice by the **Named Insured** to the Insurer;

b. ten (10) days after the receipt by the **Named Insured** of a written notice of termination from the Insurer based upon failure to pay premium due, unless such premium is received by the Insurer prior to such tenth (10th) date;

c. at such other time as may be agreed upon by the Insurer and the **Named Insured**; or

d. upon expiration of the **Policy Period** as set forth in Item 2. of the Declarations of this Policy.

The Insurer shall refund the unearned premium computed at ninety percent (90%) of pro-rata if this Policy is terminated by the **Named Insured**. Under any other circumstances the refund shall be computed pro rata. Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable. If the **Policy Period** is more than eighteen (18) months, the premium charged for this Policy shall be fully earned at inception of the **Policy Period**.

The Insurer shall not be required to renew this Policy upon its expiration.

6. **Extended Claims Reporting Periods**

If: i) the **Named Insured** cancels this Policy, ii) either the Insurer or the **Named Insured** refuses or declines to renew this Policy for any reason, iii) a Transaction described in Condition 10. occurs, or, iv) solely with respect to the below mentioned Automatic Extended Claims Reporting Period, this Policy is renewed by the Insurer, the **Named Insured** shall have the right to:

a. **Automatic Extended Claims Reporting Period**

i. in accordance with items i), ii) and iii) above, a sixty (60) day period (an "Automatic Extended Claims Reporting Period") immediately following the termination date of this Policy during which the **Insured** may report to the Insurer in writing **Claims** under Insuring Clauses 1., 2., 3. or 4. first made against an **Insured** during this Automatic Extended Claims Reporting Period for any **Network Security Breach, Privacy Breach, Electronic Media Peril** or **Wrongful Act** committed prior to the end of the **Policy Period** and otherwise covered by this Policy;

ii.  solely in accordance with item iv) above, a sixty (60) day period (an "Automatic Extended Claims Reporting Period") immediately following the renewal of this Policy, by the Insurer, during which the **Insured** may report to the Insurer in writing **Claims** first made against an **Insured**, during the last thirty (30) days of the **Policy Period**, under Insuring Clauses 1., 2., 3. or 4. for any **Network Security Breach, Privacy Breach, Electronic Media Peril** or **Wrongful Act** committed prior to the end of the **Policy Period** and otherwise covered by this Policy.

The Automatic Extended Claims Reporting Period shall not apply to **Claims** that are covered under any subsequent insurance the **Insured** purchases or that is purchased for the **Insured's** benefit or that would be covered but for the exhaustion of the amount of insurance applicable to such **Claims** or that is within any **Deductible** amount. This Automatic Extended Claims Reporting Period may not be cancelled by the Insurer and does not require the payment of an additional premium. This Automatic Extended Claims Reporting Period shall be included within the Optional Extended Claims Reporting Period if such is purchased. The Automatic Extended Claims Reporting Period shall not in any way increase the Limits or Limits of Liability of this Policy.

b.  **Optional Extended Claims Reporting Period**

purchase an Optional Extended Claims Reporting Period, for the period specified in Item 10. b. of the Declarations, during which the **Named Insured** may report to the Insurer in writing **Claims** under Insuring Clauses 1., 2., 3. or 4. first made against an **Insured** during this Optional Extended Claims Reporting Period for any **Network Security Breach, Privacy Breach, Electronic Media Peril or Wrongful Act** committed prior to the end of the **Policy Period** and otherwise covered by this Policy.

i.  The Optional Extended Claims Reporting Period will commence on the effective date of such cancellation, nonrenewal or a Transaction, as described in Condition 10., occurs. The Optional Extended Claims Reporting Period will run concurrently with the Automatic Extended Claims Reporting Period.

ii.  The Optional Extended Claims Reporting Period shall be effective only upon the payment of an additional premium specified in Item 10. a. of the Declarations. At the commencement of the Optional Extended Claims Reporting Period, the entire premium shall be deemed fully earned and nonrefundable.

iii.  The **Named Insured's** right to purchase the Optional Extended Claims Reporting Period must be exercised by written notice postmarked no later than sixty (60) days after the cancellation, nonrenewal or a Transaction, as described in Condition 10., occurs. The notice to purchase must include payment of the premium for the Optional Extended Claims Reporting Period.

The Automatic Extended Claims Reporting Period and the Optional Extended Claims Reporting Period will provide that a **Claim** first made during these periods will be deemed to have been made on the last day of the **Policy Period**. The Automatic Extended Claims Reporting Period and the Optional Extended Claims Reporting Period will not extend the **Policy Period** or reinstate or increase the Limit of Liability or Sublimits of Liability set forth in either Item 4. or Item 5. of the Declarations of the Policy. The Automatic Extended Claims Reporting Period or the Optional Extended Claims Reporting Period applies only to **Claims** arising out of a **Network Security Breach, Privacy Breach, Electronic Media Peril** or **Wrongful Act** covered under this Policy. Such **Network Security Breach, Privacy Breach, Electronic Media Peril** or **Wrongful Act** giving rise to the **Claim**, covered by this Policy, must be committed before the cancellation, nonrenewal or Transaction date as described in Condition 10. and after the applicable **Retroactive Date** as stated in Item 9. of the Declarations of the Policy.

The **Named Insured** shall have no right to the coverage provided by the Automatic Extended Claims Reporting Period and no right to purchase the Optional Extended Claims Reporting Period, unless the **Insured** has complied with all terms and conditions of the Policy and all outstanding premiums and **Deductible** have been paid in full.

7.  **Worldwide Territory**

Coverage under this Policy shall extend anywhere in the world.

8.  **Valuation of Foreign Currency**

All premiums, limits, **Deductible, Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of **Loss** under this Policy is stated in a currency other than United States of America dollars, payment under this Policy shall be made in United States dollars at the rate of exchange published in the <u>Wall Street Journal</u> on the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of **Loss** is due, respectively.

Insured

9. **Acquisitions, Mergers and Subsidiaries**

If, during the **Policy Period** the **Named Insured** acquires a **Subsidiary**, then the **Subsidiary** shall be added by endorsement to the Policy, and its officers, directors, partners, members, principals, executives, employees, and independent contractors shall become **Insureds** as long as:

a. the **Named Insured** gives written notice to the Insurer of the acquisition of the **Subsidiary** as soon as practicable, together with such information the Insurer may require, (except as provided for in (1) and (2) below), and

b. the **Named Insured** pays any reasonable additional premium required by the Insurer.

Such coverage shall be afforded, subject to the terms and conditions of this Policy, from the date of the acquisition of the **Subsidiary**, but only for **Network Security Breaches**, **Privacy Breaches**, **Electronic Media Perils**, **Wrongful Acts**, **Network Interruptions** or **Cyber Extortion Threats** committed or allegedly committed after the acquisition of the **Subsidiary**, unless the Insurer agrees by endorsement to provide coverage for **Network Security Breaches**, **Privacy Breaches**, **Electronic Media Perils**, **Wrongful Acts**, **Network Interruptions** or **Cyber Extortion Threats** committed or allegedly committed prior to such date.

The conditions to such coverage set forth in a. and b. above shall not apply with respect to an acquisition of a **Subsidiary** if: (1) at the time of such acquisition, the total assets or the annual revenues of the **Subsidiary** so acquired represented less than ten percent (10%) of the total assets or the annual revenues of the **Named Insured** as reflected in the **Named Insured's** most current consolidated financial statements existing at the inception date of this Policy; or (2) in connection with such acquisition, the **Named Insured** assumes any liabilities and, at the time of such assumption, the liabilities so assumed represented less than ten percent (10%) of the total liabilities of the **Named Insured** as reflected in the **Named Insured's** most current consolidated financial statements existing at the inception date of this Policy.

10. **Change of Control**

If during the **Policy Period** the **Named Insured** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or organization or group of persons or organizations acting in concert (herein referred to as the "Transaction"); then this Policy shall continue in full force and effect as to **Network Security Breaches**, **Privacy Breaches**, **Electronic Media Perils**, **Wrongful Acts**, **Network Interruptions** or **Cyber Extortion Threats** occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this Policy for any **Network Security Breaches**, **Privacy Breaches**, **Electronic Media Perils**, **Wrongful Acts**, **Network Interruptions** or **Cyber Extortion Threats** occurring after the effective time of the Transaction. The entire premium for this Policy shall be deemed fully earned at the time of the Transaction and the **Named Insured** shall also have the right to elect an Extended Claims Reporting Period described in Condition 6. of this Policy or a greater period as may be negotiated with the Insurer.

The **Named Insured** shall give the Insurer written notice of the Transaction as soon as practicable, but not later than thirty (30) days after the effective date of the Transaction.

11. **Notice and Authorization**

All notices under this Policy shall be in writing and given by prepaid express courier, certified mail or fax, unless otherwise specified, and properly addressed to the appropriate party.

Notice to any **Insureds** may be given to the **Named Insured** at the address as shown in Item 1. of the Declarations. It is agreed the **Named Insured** shall act on behalf of all **Insureds** with respect to the giving and receiving of notice of **Claim** or **Loss**, cancellation or termination, the payment of premiums and the receiving of any return premiums that may become due under this Policy, the negotiation, agreement to and acceptance of any endorsements issued to form a part of this Policy, and the exercising or declining to exercise any right to an Extended Claims Reporting Period.

12. **Action Against the Insurer**

No action shall lie against the Insurer unless, as a condition precedent thereto, the **Insured** has fully complied with all the terms of this Policy, and the amount of the **Insured's** obligation to pay is finally determined, with respect to Insuring Clauses 1., 2., 3. and 4., after actual trial or arbitration against the **Insured** or by written agreement of the **Insured**, the claimant or the Insurer; or with respect to all other Insuring Clauses, by written agreement between the Insurer and the **Insured**. No person or organization shall have any right under this Policy to join the Insurer as a party to any action against the **Insured** to determine the **Insured's** liability, nor shall the Insurer be impleaded by the **Insured** into such action. The bankruptcy or insolvency of any of the **Insureds** shall not relieve the Insurer of its obligations under the Policy.

Insured

13. **Other Insurance**

The insurance under this Policy shall apply in excess of any other valid and collectible insurance available to any **Insured** for **Loss** covered under this Policy, whether such insurance is stated to be primary, excess, contributory or otherwise, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided in this Policy. This Policy will not be subject to the terms of any other insurance.

14. **Proof of Loss and Appraisal**

With respect to Insuring Clauses 6. and 7. as a condition precedent to any coverage under this Policy, the **Insured** shall:

a. within ninety (90) days of sustaining a **Data Loss** or **Network Interruption Business Income & Extra Expense Loss** and no later than twelve (12) months after the expiration of the **Policy Period**, provide the Insurer with a written, detailed and sworn proof of loss. Such proof of loss shall include the following without limitation: the full particulars of the **Data Loss** or **Network Interruption Business Income & Extra Expense Loss** including but not limited to the time, date and cause of the **Network Interruption**, **Corruption** of a **Data Asset** and **Data Loss**; a detailed calculation of any **Data Loss** or **Network Interruption Business Income & Extra Expense Loss**; the **Insured Entity's** interest and the interest of all others in the property, the sound value thereof and the amount of **Data Loss** or **Network Interruption Business Income & Extra Expense Loss** or damage thereto and all other insurance thereon; and the underlying documents, data or materials that reasonably relate to or form the basis of the claim for such **Data Loss** or **Network Interruption Business Income & Extra Expense Loss**. The costs and expenses of preparing and submitting a proof of loss, and establishing or proving **Data Loss**, **Network Interruption Business Income & Extra Expense Loss** or any other **Loss** under this Policy shall be the **Insured's** obligation, and are not covered under this Policy;

b. at the Insurer's request, the **Insured** shall submit to examination by a representative of the Insurer under oath.

With respect to Insuring Clauses 6. and 7. in the event the Insurer and Insured do not agree on the amount of **Data Loss** or **Network Interruption Business Income & Extra Expense Loss**, each party shall select and pay an appraiser or other qualified expert (the "Appraiser(s)") to determine the amount of the **Data Loss** or **Network Interruption Business Income & Extra Expense Loss**, and the Appraisers shall choose an umpire. If the Appraisers cannot agree on an umpire, the **Insured** or the Insurer may request a judge of a court having jurisdiction over the matter to make the selection. Each Appraiser shall submit the amount of the **Data Loss** or **Network Interruption Business Income & Extra Expense Loss** to the umpire, and agreement by the umpire and at least one of the Appraisers regarding the amount of the **Data Loss** or **Network Interruption Business Income & Extra Expense Loss** shall be binding on all **Insureds** and the Insurer. The **Insured** and the Insurer will equally share the costs of the umpire and any other costs relating to the proceeding, other than the cost of the Appraisers.

15. **Assignment**

This Policy and any and all rights hereunder are not assignable without the written consent of the Insurer.

16. **Termination of Prior Policies**

Any Policies issued by the Insurer or its affiliates and specified in Item 11. of the Declarations of this Policy shall terminate, if not already terminated, as of the inception date of this Policy.

17. **Subrogation**

In the event of any payment under this Policy, the Insurer shall be subrogated to the extent of such payment to all the **Insureds'** rights of recovery. The **Insured** shall execute and deliver all instruments and papers and do whatever else is necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Insurer to effectively bring suit in the name of the **Insured**.

18. **Application**

By accepting this Policy, and the insurance provided thereunder, the **Insureds** agree that the statements and representations made in the Application are true and material to the risk assumed by the Insurer. This Policy is issued in reliance upon the truth of such statements and representations, and this Policy embodies all agreements between the **Insureds** and the Insurer relating to this insurance.

Insured

19. **Changes**

The terms and conditions of this Policy shall not be waived or changed, except by endorsement authorized by the Insurer and issued to form a part of this Policy.

20. **Headings**

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

21. **Entire Agreement**

The **Insureds** agree that this Policy, including the Application and any endorsements, constitutes the entire agreement between the **Insureds** and the Insurer relating to the insurance provided by this Policy.

Insured

Policy Number:  TEC0002639                                                    RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALIFORNIA AMENDATORY ENDORSEMENT

The Policy is amended as follows:

**IV. CONDITIONS**, Section 5., **Cancellation and Nonrenewal**, is deleted in its entirety and replaced with the following:

"5. **Cancellation and Nonrenewal**

This Policy shall terminate at the earliest of the following times:

a.  the effective date of termination specified in a prior written notice by the **Named Insured** to the Insurer;

b.  ten (10) days after the receipt by the **Named Insured** of a written notice of termination from the Insurer based upon failure to pay premium due, unless such premium is received by the Insurer prior to such tenth (10th) day;

c.  at such other time as may be agreed upon by the Insurer and the **Named Insured**; or

d.  upon expiration of the **Policy Period** as set forth in Item 2. of the Declarations of this Policy.

The Insurer shall refund the unearned premium computed at ninety percent (90%) of pro rata if this Policy is terminated by the **Named Insured**. Under any other circumstances the refund shall be computed pro rata. Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable."

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Insured

Policy Number: TEC0002639                                          RLI Insurance Company

# SIGNATURE PAGE

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Jean M. Stephenson

Corporate Secretary

Craig W. Kliethermes

President & COO

ILF 0001C (04/16)

Insured

Policy Number:  TEC0002639



**RLI Insurance Company**
Peoria, Illinois 61615

# NOTICE TO POLICYHOLDERS

## REGARDING THE UNITED STATES TREASURY DEPARTMENT – OFFICE OF FOREIGN ASSETS CONTROL (OFAC)

This Policyholder Notice does not provide coverage nor can it be construed to replace any provisions of your policy. Please read your policy carefully to determine your rights, duties, and what is and what is not covered by your policy. This Notice should only be used to provide information concerning the possible impact of your insurance coverage as it relates to directives issued by OFAC.

**PLEASE READ THIS NOTICE CAREFULLY.**

OFAC administers and enforces economic and trade sanctions and places restrictions on certain transactions. OFAC acts pursuant to Executive Orders of the President of the United States and specific legislation. OFAC has identified and named numerous foreign agents, front organizations, terrorists, terrorist organizations, and narcotics traffickers, among others, as "Specially Designated Nationals and Blocked Persons." The complete list can be found on the United States Treasury website – http://www.treas.gov/ofac.

Various trade or economic sanctions and other laws or regulations prohibit us from providing insurance in certain circumstances. In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance contract is considered a blocked or frozen contract and will be considered null and void. When an insurance policy is considered to be a blocked or frozen contract, all provisions of this insurance will be immediately subject to OFAC, and neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments may also apply.

UW 20342 (03/12)                                                                                     Page 1 of 1

Insured

# Exhibit B

Policy Number: TEC0002871

# RLI

## NOTICE TO OUR BROKERS AND AGENTS
## OF OUR CLAIM NOTIFICATION PROCEDURE

As part of our continuing effort to provide you with the best service available, ALL CLAIMS, OCCURRENCES, INCIDENTS and LAWSUITS under this policy are to be reported immediately to:

**RLI Insurance Company**

**Email (preferred):  New.Claim@rlicorp.com**

**Fax:  (866) 692-6796**

**Phone:  (800) 444-0406**

**Street Address:  9025 N. Lindbergh Drive, Peoria, IL  61615**

**Mailing Address:  P.O. Box 3961, Peoria, IL 61612-3961**

When reporting the incident, be prepared to supply a report of claim or the following information:

1. Policy Number
2. Contact Person information (name, address, phone, etc.)
3. Nature of incident
4. Date of incident

When reporting multiple incidents, please send each loss notice separately.

RIL 2131 (08/12)

# RLI Technology Professionals Policy™



RLI Insurance Company
9025 North Lindbergh Drive
Peoria, Illinois 61615
Phone: (309) 692-1000

A stock insurance company,
herein called the Insurer.

**THIS POLICY CONTAINS BOTH LIABILITY AND LOSS COVERAGE. INSURING CLAUSES 1., 2., 3. AND 4. ARE PROVIDED ON A CLAIMS MADE AND REPORTED BASIS. CLAIM EXPENSES SHALL REDUCE THE APPLICABLE LIMIT OF LIABILITY. INSURING CLAUSES 5., 6., 7. AND 8. ARE PROVIDED FOR LOSS OCCURRING DURING THE POLICY PERIOD. ALL PAYMENTS UNDER THIS POLICY SHALL REDUCE THE APPLICABLE LIMIT.**

**THIS POLICY ONLY AFFORDS COVERAGE UNDER THOSE INSURING CLAUSES BELOW THAT ARE INDICATED AS PURCHASED ON THIS DECLARATIONS PAGE.**

Policy Number:  TEC0002871

Item 1.  **Named Insured:**

Royal 4 Systems
5000 E. Spring St.
Suite 415
Long Beach, CA 90815

Item 2.  **Policy Period:**  From   03/19/2019      12:01 A.M.
To     03/19/2020      12:01 A.M.
Local Time at the address shown above.

Item 3.  Coverage Purchased:

| | | | | |
|---|---|---|---|---|
| a. | Technology Services Liability Coverage | (Insuring Clause 1.): | ☒ Yes | ☐ No |
| b. | Enterprise Privacy Liability Coverage | (Insuring Clause 2.): | ☒ Yes | ☐ No |
| c. | Electronic Media Liability Coverage | (Insuring Clause 3.): | ☒ Yes | ☐ No |
| d. | Network Security Liability Coverage | (Insuring Clause 4.): | ☒ Yes | ☐ No |
| e. | Crisis Management Loss Coverage | (Insuring Clause 5.): | ☒ Yes | ☐ No |
| f. | Network Interruption Business Income & Extra Expense Loss Coverage | (Insuring Clause 6.): | ☒ Yes | ☐ No |
| g. | Data Loss Coverage | (Insuring Clause 7.): | ☒ Yes | ☐ No |
| h. | Cyber Extortion Loss Coverage | (Insuring Clause 8.): | ☒ Yes | ☐ No |

Item 4.  Policy Annual Aggregate Limit of Liability
for all Coverage Purchased:                    $1,000,000

Item 5.  Sublimits for Coverage Purchased:

| | | | | |
|---|---|---|---|---|
| a. | Technology Services Liability Coverage | (Insuring Clause 1.): | $1,000,000 $1,000,000 | each **Claim** each **Policy Year** Aggregate |
| b. | Enterprise Privacy Liability Coverage | (Insuring Clause 2.): | $1,000,000 $1,000,000 | each **Claim** each **Policy Year** Aggregate |
| c. | Electronic Media Liability Coverage | (Insuring Clause 3.): | $1,000,000 $1,000,000 | each **Claim** each **Policy Year** Aggregate |
| d. | Network Security Liability Coverage | (Insuring Clause 4.): | $1,000,000 $1,000,000 | each **Claim** each **Policy Year** Aggregate |

Item 5.  Sublimits for Coverage Purchased (continued):

    e.  Crisis Management Loss Coverage    (Insuring Clause 5.):    $100,000

    f.  Network Interruption Business Income  (Insuring Clause 6.):    $100,000
       & Extra Expense Loss Coverage

    g.  Data Loss Coverage    (Insuring Clause 7.):    $100,000

    h.  Cyber Extortion Loss Coverage    (Insuring Clause 8.):    $100,000

Coverages e., f., g. and h. referenced above are subject to **Insuring Clause 5-8 Sublimit**.

Item 6.  **Insuring Clause 5-8 Sublimit:**    $100,000

Item 7.  **Deductible** for each **Claim** and **Loss:**    $2,500

Item 8.  **Waiting Period** (applicable to Insuring Clause 6.):    6    business hours

Item 9.  **Retroactive Date** for Liability Coverage Purchased:

    a.  Technology Services Liability Coverage    03/19/2001

    b.  Enterprise Privacy Liability Coverage    03/19/2013

    c.  Electronic Media Liability Coverage    03/19/2013

    d.  Network Security Liability Coverage    03/19/2013

Item 10.  Optional Extended Claims Reporting Period:

    a.  Optional Extended Claims Reporting Period Premium:    $3,648.00

    b.  Optional Extended Claims Reporting Period:    12 months

Item 11.  Termination of Prior Policies:    TEC0002639

Item 12.  Policy Premium:    $5,613.00
       Surcharges:    $N/A
                          Total Premium:    $5,613.00  Not including other fees-refer to your agent

Item 13.  Endorsements Effective at Inception:

    TECH 404 (11/12) and ILF 0001C (04/16)

Date:  3/27/2019

Authorized Company Representative

Policy Number:   TEC0002871

**RLI Insurance Company**
# Technology Professionals Policy™

**THIS POLICY CONTAINS BOTH LIABILITY AND LOSS COVERAGE. INSURING CLAUSES 1., 2., 3. AND 4. ARE PROVIDED ON A CLAIMS MADE AND REPORTED BASIS. CLAIM EXPENSES SHALL REDUCE THE APPLICABLE LIMIT OF LIABILITY. INSURING CLAUSES 5., 6., 7. AND 8. ARE PROVIDED FOR LOSS OCCURRING DURING THE POLICY PERIOD. ALL PAYMENTS UNDER THIS POLICY SHALL REDUCE THE APPLICABLE LIMIT.**

In consideration of the payment of the premium, and in reliance upon the statements made to the Insurer in the Application forming a part hereof and its attachments and the material incorporated therein, RLI Insurance Company, herein called the "Insurer," and the Insured agree as follows:

## I.   INSURING CLAUSES

**1.   Technology Services Liability Coverage**

If Insuring Clause 1. Technology Services Liability Coverage is purchased pursuant to Item 3. a. of the Declarations, the Insurer will pay on behalf of the **Insured**, those sums which the **Insured** is legally obligated to pay as **Damages** and **Claim Expenses** as a result of any **Claim** first made against the **Insured** during the **Policy Period** and reported in writing to the Insurer as soon as practicable during the **Policy Period** or the Extended Claims Reporting Period (if applicable), for any **Wrongful Act** in the performance or failure to perform **Technology Services**, including a **Wrongful Act** resulting in **Personal Injury**, that first occurred on or after the **Retroactive Date**. However, this Insuring Clause 1. shall not apply to that portion of any **Claim** which would be covered under Insuring Clauses 2. or 4., whether or not such Insuring Clauses were purchased.

**2.   Enterprise Privacy Liability Coverage**

If Insuring Clause 2. Enterprise Privacy Liability Coverage is purchased pursuant to Item 3. b. of the Declarations, the Insurer will pay on behalf of the **Insured**, those sums which the **Insured** is legally obligated to pay as **Damages** and **Claim Expenses** as a result of any **Claim** first made against the **Insured** during the **Policy Period** and reported in writing to the Insurer as soon as practicable during the **Policy Period** or the Extended Claims Reporting Period (if applicable), for any **Privacy Breach** that first occurred on or after the **Retroactive Date**.

**3.   Electronic Media Liability Coverage**

If Insuring Clause 3. Electronic Media Liability Coverage is purchased pursuant to Item 3. c. of the Declarations, the Insurer will pay on behalf of the **Insured**, those sums which the **Insured** is legally obligated to pay as **Damages** and **Claim Expenses** as a result of any **Claim** first made against the **Insured** during the **Policy Period** and reported in writing to the Insurer as soon as practicable during the **Policy Period** or the Extended Claims Reporting Period (if applicable), for any **Electronic Media Peril** that first occurred on or after the **Retroactive Date**.

**4.   Network Security Liability Coverage**

If Insuring Clause 4. Network Security Liability Coverage is purchased pursuant to Item 3. d. of the Declarations, the Insurer will pay on behalf of the Insured, those sums which the **Insured** is legally obligated to pay as **Damages** and **Claim Expenses** as a result of any **Claim** first made against the **Insured** during the **Policy Period** and reported in writing to the Insurer as soon as practicable during the **Policy Period** or the Extended Claims Reporting Period (if applicable), for any **Network Security Breach** that first occurred on or after the **Retroactive Date**.

**5.   Crisis Management Loss Coverage**

If Insuring Clause 5. Crisis Management Loss Coverage is purchased pursuant to Item 3. e. of the Declarations, the Insurer will indemnify the **Insured Entity** for **Crisis Management Expenses**, that are the direct result of a **Network Security Breach** or **Privacy Breach** that first occurred during the **Policy Period**, provided such **Network Security Breach** or **Privacy Breach** is reported in accordance with Condition 4. c. of this Policy.

Insured

6. **Network Interruption Business Income & Extra Expense Loss Coverage**

If Insuring Clause 6. Network Interruption Business Income & Extra Expense Loss Coverage is purchased pursuant to Item 3. f. of the Declarations, the Insurer will indemnify the **Insured Entity** for **Network Interruption Business Income & Extra Expense Loss** (including **Service Provider Network Interruption Business Income & Extra Expense Loss**, if applicable), incurred by the **Insured Entity** during the **Period of Recovery** (or **Extended Interruption Period**, if applicable), and exceeding the **Waiting Period**, that is the direct result of a **Network Interruption** that first occurred during the **Policy Period**, which is directly caused by a **Network Security Breach** during the **Policy Period**, provided the **Network Interruption** is reported in accordance with Condition 4. c. of this Policy.

7. **Data Loss Coverage**

If Insuring Clause 7. Data Loss Coverage is purchased pursuant to Item 3. g. of the Declarations, the Insurer will indemnify the **Insured Entity** for **Data Loss**, that is the direct result of a **Network Security Breach** that first occurred during the **Policy Period**, which directly results in the **Corruption** of a **Data Asset** that first occurred during the **Policy Period**, provided such **Corruption** of a **Data Asset** is reported in accordance with Condition 4. c. of this Policy.

8. **Cyber Extortion Loss Coverage**

If Insuring Clause 8. Cyber Extortion Loss Coverage is purchased pursuant to Item 3. h. of the Declarations, the Insurer will indemnify the **Insured Entity** for **Cyber Extortion Loss** that is the direct result of a **Cyber Extortion Threat** that first occurred during the **Policy Period**, and is reported in accordance with Condition 4. c. of this Policy.

## II. DEFINITIONS

When used in this Policy:

"**Application Service Provider**" means the deployment, management, operation, or maintenance of packaged software applications for others.

"**Bodily Injury**" means:

    a.   bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time; and,

    b.   **Bodily Injury** also means mental injury, mental anguish, emotional distress, pain and suffering, or shock.

"**Breach Notification Law**" means any local, state, federal or foreign statute or regulation requiring notice to individuals whose **Personal Information** was, or is reasonably likely to have been accessed or acquired by an unauthorized party.

"**Claim**" means:

    a.   a written demand for money or services, the threat of legal action, including injunctive or declaratory relief, service of suit or institution of arbitration proceedings, received by an **Insured**;

    b.   with respect to Insuring Clauses 2. or 4. of this Policy only, any **Regulatory Action**; or

    c.   a written request or agreement to toll or waive the statute of limitations relating to a potential **Claim**.

"**Claim Expenses**" means:

    a.   reasonable and necessary attorney's fees, expert witness fees and other reasonable and necessary fees and costs incurred by the Insurer, or by the **Insured** with the Insurer's prior written consent, in the investigation and defense of covered **Claims**; and

    b.   premiums for any appeal bond, attachment bond or similar bond in covered **Claims**, provided the Insurer shall have no obligation to apply for or furnish such bond.

However, **Claim Expenses** shall not mean or include salaries, wages or benefits of employees, directors or officers of the **Insured** or the Insurer, overhead costs, or any expenses incurred by the **Insured** in assisting or cooperating with the Insurer.

"**Computer Services**" means the development, installation, distribution, licensing, marketing, or sale of any computer or telecommunications hardware or software, or any maintenance or repair performed in connection with any computer or telecommunications hardware or software.

"**Corruption**" means intentional and malicious alteration, destruction, damage or deletion.

"**Credit Monitoring Expenses**" means reasonable and necessary expenses incurred by the **Insured Entity** within twelve (12) months after the expiration of the **Policy Period**, with the Insurer's prior written consent, for providing up to twelve (12) months credit monitoring services to those individuals whose **Personal Information** was compromised as a direct result of a **Network Security Breach** or **Privacy Breach**. Such expenses must be incurred for the purposes of mitigating a **Claim** with respect to Insuring Clauses 2., 4. or 5., of this Policy.

"**Crisis Management Expenses**" means:

    a.   reasonable and necessary expenses incurred by the **Insured Entity**, with the Insurer's prior written consent, for a public relations firm or law firm to communicate with the general public in order to mitigate the reputational damage of the **Insured Entity** directly resulting from a **Network Security Breach** or **Privacy Breach**;

    b.   **Notification Expenses**;

    c.   **Credit Monitoring Expenses**; and

    d.   **Forensic Expenses**.

"**Cyber Extortion Loss**" means:

    a.   monies or other valuable consideration, the value of which is to be determined by the Insurer in its absolute and sole discretion, demanded in conjunction with a **Cyber Extortion Threat**, and paid by the Insured Entity, with the Insurer's prior written consent, for the purpose of terminating such **Cyber Extortion Threat**;

    b.   reasonable and necessary expenses incurred by the **Insured Entity**, with the Insurer's prior written consent:

        i.   to investigate and respond to a **Cyber Extortion Threat**; and

        ii.   for a third party security consultant to prevent or terminate a **Cyber Extortion Threat**;

provided, however, that **Cyber Extortion Loss** shall not exceed the **Loss** covered under this Policy that the **Insured Entity** reasonably would have incurred if it failed to terminate the **Cyber Extortion Threat** and **Cyber Extortion Loss** shall not mean or include overhead costs, or salaries, wages or benefits of employees, directors or officers of the **Insured**.

"**Cyber Extortion Threat**" means a credible threat or series of related threats, by anyone other than any principal, partner, officer or director of the **Insured Entity** or someone induced or assisted by any principal, partner, officer or director of the **Insured Entity**, to breach **Security** and:

    a.   restrict or hinder access to the **Insured's Computer System**, including the threat to launch a **Denial of Service Attack**;

    b.   access, release, disseminate or destroy **Private Information** residing on the **Insured's Computer System**;

    c.   corrupt, alter, steal, destroy, delete or damage a **Data Asset** or the **Insured's Computer System**; or

    d.   interrupt or suspend the **Insured's Computer System**,

unless monies or other valuable consideration is paid by the **Insured Entity**.

"**Damages**" means any monetary judgment or award the **Insured** is legally obligated to pay, or a settlement negotiated with the consent of the **Insured** and the Insurer, including pre/post-judgment interest on a covered judgment, punitive or exemplary damages (where insurable by law, and the enforceability of such coverage shall be governed by such applicable law that most favors coverage for punitive or exemplary damages), but shall not mean or include any of the following:

a.  civil, criminal, administrative or regulatory fines or penalties, taxes, or trebled or other multiple damages;

b.  the return, restitution, disgorgement, offset, reduction or dispute over any fees, profits, deposits, expenses, costs, or commissions charged or collected by the **Insured**;

c.  the cost to comply with any injunctive or other non-monetary or declaratory relief or any agreement to provide such relief;

d.  any monetary judgment or award, or settlement, with respect to a **Regulatory Action**, including without limitation any remedial funds, compensatory awards, or costs related to the establishment, implementation, management or oversight of an information security program or privacy law compliance program; or

e.  any matters deemed uninsurable by law.

"**Data Asset**" means any electronic data existing in the **Insured's Computer System** that is subject to regular back up procedures, including but not limited to any databases, software or trade secrets stored thereon.

"**Data Loss**" means the lesser of: (a) reasonable and necessary costs to replace, restore or recollect a **Data Asset** to the level or condition in which it existed immediately prior to the **Network Security Breach**, or (b) if such **Data Asset** cannot reasonably be replaced, restored or recollected, reasonable and necessary costs incurred by the **Insured Entity** to reach this determination. **Data Loss** does not mean or include, and there shall be no coverage under Insuring Clause 7. for:

a.  costs or expenses incurred by the **Insured Entity** to identify or remediate software program errors or vulnerabilities or to update, replace, restore, gather, assemble, reproduce, recollect or enhance a **Data Asset** to a level or condition beyond that which existed prior to a **Network Security Breach**;

b.  costs or expenses to research or develop any **Data Asset**, including but not limited to trade secrets or other proprietary information;

c.  the monetary value of, or profits, royalties, or lost market share related to, a **Data Asset**, including but not limited to trade secrets or other proprietary information or any other amount pertaining to the value of the **Data Asset**;

d.  loss arising out of liability to third parties;

e.  overhead costs, or salaries, wages or benefits of employees, directors or officers of the **Insured**; or

f.  legal costs or legal expenses of any type.

"**Deductible**" means the deductible set forth in Item 7. of the Declarations.

"**Denial of Service Attack**" means an attack by someone, other than any principal, partner, officer or director of the **Insured Entity** or someone induced or assisted by any principal, partner, officer or director of the **Insured Entity**, intended to overwhelm the capacity of the **Insured's Computer System** by sending an excessive volume of electronic data to such computer system in order to prevent authorized access to such computer system.

"**Electronic Content**" means any information in electronic form that is created, owned or licensed by the **Insured Entity** for its own business use; provided, however, that **Electronic Content** does not include or mean any:

a.  information incorporated into or otherwise a part of the **Technology Services** or products of the **Insured**;

b.  information, advertising or content created, licensed or provided by the **Insured** to a client, customer or other person or entity; or

c.  information, advertisement or content (including any copies thereof) that is also displayed or published in any medium (including without limitation, newspaper, magazine, television, radio or a third party internet site) other than the **Insured's Internet Site**.

"**Electronic Data Processing**" means the conversion of data from the source material of others into a form of media for processing on electronic data processing machines and the performance of subsequent processing of such data, including database administration, for others.

Insured

"**Electronic Data Processing Consulting**" means the performance of feasibility studies, training of others, giving opinions, staffing services or recommendations regarding the electronic data processing objectives and needs of others.

"**Electronic Media Peril**" means the display of **Electronic Content** on the **Insured's Internet Site** that directly results in any of the following:

    a.   libel, slander or other defamatory or disparaging material;

    b.   violation of an individual's right of privacy;

    c.   plagiarism or misappropriation of ideas under an implied contract;

    d.   infringement of copyright, trademark, trade name, trade dress, title, slogan, service mark or service name; or

    e.   domain name infringement or improper deep-linking or framing.

"**Extended Income Loss**" means **Income Loss** during the **Extended Interruption Period**.

"**Extended Interruption Period**" begins on the date and time the **Period of Recovery** ends, and terminates on the date and time the **Network Interruption** either ends or would have ended had the **Insured Entity** or **Service Provider** (if applicable) exercised due diligence and dispatch; provided, however, that in no event shall the **Extended Interruption Period** exceed thirty (30) days beyond the **Period of Recovery**.

"**Extra Expense**" means the reasonable and necessary expenses incurred during the **Period of Recovery** by the **Insured Entity**, with the Insurer's prior written consent:

    a.   to reduce **Income Loss** provided that such expenses are over and above the total reasonable and necessary expenses that the **Insured** would have incurred had no **Network Interruption** occurred and do not exceed the amount by which the **Income Loss** covered under this Policy is thereby reduced;

    b.   to minimize or shorten the duration of a **Network Interruption** and continue the **Insured Entity's** business, which would not have been incurred had no **Network Interruption** occurred; and

    provided that **Extra Expense** shall not mean or include, and there shall be no coverage under Insuring Clause 6. for: expenses incurred by the **Insured** to update, upgrade, enhance or replace the **Insured's Computer System** to a level beyond that which existed prior to the **Network Interruption**; penalties of any nature, however denominated, arising by contract; or **Data Loss, Crisis Management Expenses** or **Cyber Extortion Loss**.

"**Forensic Expenses**" means the reasonable and necessary expenses incurred by the **Insured Entity** to investigate the cause of a **Network Security Breach** or **Privacy Breach**.

"**Identity Theft**" shall mean the theft or unauthorized copying of **Personal Information** of an individual, and use of such **Personal Information** to open new financial accounts for the purpose of fraudulently impersonating such individual, including without limitation, payment card accounts, bank accounts, loan accounts, health insurance accounts and insurance accounts.

"**Income Loss**" means the net profit (or net loss) before income taxes that the **Insured Entity** is prevented from earning during the **Period of Recovery** (or **Extended Interruption Period**, if applicable) as a direct result of a **Network Interruption**.

**Income Loss** shall be reduced to the extent the **Insured Entity** or **Service Provider** (if applicable) should have been able, with reasonable speed, effort and due diligence, to reduce or limit such **Network Interruption** or **Income Loss**, or conduct its business operations by other means. In determining **Income Loss**, due consideration shall be given to the prior experience of the **Insured Entity's** business operations before the beginning of the **Period of Recovery** and to the probable business operations the **Insured Entity** could have performed had no **Network Interruption** occurred.

"**Insured**" means the following:

    a.   the **Named Insured(s)** designated in Item 1. of the Declarations;

    b.   any **Subsidiary(ies)**;

c.   any current or former partner, principal, member, executive, officer or director of the **Insured Entity**, but solely with respect to the performance of his or her duties as such on behalf of the **Insured Entity** that are within the scope of his or her position;

d.   any current or former employee(s) or independent contractor(s) of the **Insured Entity**, but solely with respect to the performance of his or her duties on behalf of the **Insured Entity** that are within the scope of his or her employment or contract;

e.   solely as respects Insuring Clauses 1., 2., 3. and 4., the heirs, executors, administrators, assigns and legal representatives of each of the above **Insured(s)** in the event of the **Insured's** death, incapacity or bankruptcy; and

f.   solely as respects Insuring Clauses 1., 2., 3. and 4., the lawful spouse or domestic partner (whether such stature is derived by reason of statutory law, common law, or any other applicable law of any jurisdiction in the world) of any individual that qualifies as an **Insured** pursuant to subsections c. or d. of this definition, but only with respect to **Claims** arising solely out of his or her capacity as the spouse or domestic partner of such **Insured**, including such **Claims** that seek damages recoverable from marital community property, property jointly held by such **Insured** and the spouse or domestic partner, or property transferred from such **Insured** to the spouse or domestic partner; provided, however, that this extension shall not afford coverage for any acts or omissions of the spouse or domestic partner.

"**Insured Entity**" means:

a.   the **Named Insured(s)** designated in Item 1. of the Declarations; and

b.   any **Subsidiary(ies)**.

"**Insured's**" means to, of, or by the **Insured**.

"**Insured's Computer System**" means any computer hardware, software or firmware, and components thereof including data stored thereon, that is owned or leased by the **Insured Entity**, and is under the direct operational control of the **Insured Entity** or a **Service Provider** for or on behalf of the **Insured Entity**.

"**Insured's Internet Site**" means any internet website accessible by the general public that is hosted and controlled by the **Insured Entity** or **Service Provider** (if applicable) including weblogs, bulletin boards, message boards, or online forums that are part of the **Insured Entity's** internet website; provided, however, the **Insured's Internet Site** shall not include any website hosted or controlled by any **Insured** for or on behalf of its clients, customers or others.

"**Insuring Clause 5-8 Sublimit**" means the Insurer's maximum liability under Insuring Clauses 5., 6., 7. and 8. of this Policy.

"**Loss**" means **Damages, Claim Expenses, Data Loss, Network Interruption Business Income & Extra Expense Loss, Service Provider Network Interruption Business Income & Extra Expense Loss, Cyber Extortion Loss and Crisis Management Expenses.**

"**Malicious Code**" means any unauthorized and corrupting self-replicating or self-propagating code, script designed to disperse or copy itself, or other distributed attack (such as a virus, Trojan horse, worm, malware or other similar harmful software program, code or script) which is consciously introduced into or targeted at the **Insured's Computer System**. This definition does not include any self-replicating or self-propagating code, script designed to disperse or copy itself, or other distributed attack which is not consciously introduced into or targeted at the **Insured's Computer System**, regardless of its form and whether it comprises a virus, Trojan horse, worm, malware or other similar harmful software program, code or script.

"**Named Insured**" means the company named in Item 1. of the Declarations.

"**Network Interruption Business Income & Extra Expense Loss**" means: **Income Loss** and **Extra Expense** caused by a **Network Interruption**. **Network Interruption Business Income & Extra Expense Loss** also means **Extended Income Loss**, but only if **Income Loss** and **Extra Expense** during the **Period of Recovery** exceeds the **Deductible**. **Network Interruption Business Income & Extra Expense Loss** does not mean or include any of the following:

a.   loss arising out of liability to third parties;

b.   legal costs or legal expenses of any type;

    c.   loss incurred as a result of unfavorable business conditions; or

    d.   loss of market or any other consequential loss.

"**Network Interruption**" means the actual and measurable interruption or suspension of the **Insured's Computer System**.

"**Network Security Breach**" means:

    a.   the failure or inability of **Security** to prevent:

        i.   unauthorized access to or unauthorized use of the **Insured's Computer System**;

        ii.   the transmission of **Malicious Code** to or from the **Insured's Computer System**;

        iii.   the theft or unauthorized copying of data on the **Insured's Computer System**;

        iv.   the infection or implantation of **Malicious Code** on the **Insured's Computer System**;

        v.   a **Denial of Service Attack**; or

        vi.   **Corruption** to electronic data on the **Insured's Computer System**; or

    b.   the failure or inability of **Security** to prevent the theft of data as a result of the physical theft, by a person other than an **Insured**, of the **Insured's** computer hardware or storage media from a premises occupied and controlled by the **Insured Entity**; or

    c.   the theft of data as a result of the physical theft of a laptop computer or other hardware provided by the **Insured Entity** to an **Insured**.

"**Notification Expenses**" means reasonable and necessary expenses incurred by the **Insured Entity**, with the **Insurer's** prior written consent, for purposes of determining whether any **Breach Notification Law** applies, and assisting the **Insured Entity** to comply with applicable **Breach Notification Laws**. **Notification Expenses** does not mean or include salaries, wages or benefits of employees, directors or officers of the **Insured Entity**.

"**Period of Recovery**" begins on the date and time the **Network Interruption** first occurs, and terminates on the date and time the **Network Interruption** either ends or would have ended had the **Insured Entity** or **Service Provider** (if applicable) exercised due diligence and dispatch; provided, however, that in no event shall the **Period of Recovery** exceed thirty (30) days.

"**Personal Information**" means any:

    a.   individual's name in combination with any one or more of the following:

        i.   social security number;

        ii.   driver's license number or any other state identification number;

        iii.   non-public medical or healthcare data including protected health information; or

        iv.   any account number, credit or debit card number in combination with any required password, access code or other security code that would permit access to the financial account; or

    b.   non-public personal information as defined in any **Privacy Regulation**.

"**Personal Injury**" means any actual or alleged:

    a.   false arrest, detention or imprisonment;

    b.   wrongful entry or eviction or other invasion of private occupancy;

    c.   malicious prosecution;

    d.   libel, slander or other defamatory or disparaging material; or

    e.   a publication or an utterance in violation of an individual's right of privacy.

**"Policy Period"** means the period of time specified in Item 2. of the Declarations of this Policy, subject to prior nonrenewal, cancellation or termination. If this period is less than or greater than one year, then the Limits specified in the Declarations shall be the Insurer's maximum limit under each Insuring Clause for the entire period. **Policy Period** does not include any Automatic Extended Claims Reporting Period. If the length of the **Policy Period** is the same as the **Policy Year**, the terms **Policy Period** and **Policy Year** are used interchangeably herein.

**"Policy Year"** means each consecutive twelve (12) months of the **Policy Period** beginning on the effective date shown in the Declarations. However, if a **Policy Year** within a **Policy Period** is modified by an endorsement, then that modified year will be deemed a **Policy Year** for the purposes of determining the Annual Aggregate Limit of Liability.

**"Pollutants"** means any solid, liquid, gaseous or thermal irritant, or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed. **Pollutants** also includes any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi. **Pollutants** also includes any oil or oil products; asbestos or asbestos products; emissions from electric or magnetic or electromagnetic fields; odor; or noise.

**"Privacy Breach"** means the failure by the **Insured** or **Service Provider** to prevent the theft or misappropriation of **Private Information** while in the care, custody or control of an **Insured** or **Service Provider**; or the unintentional violation of the **Insured's** privacy policy that directly results in a violation of a **Privacy Regulation**.

**"Privacy Regulation"** means statutes or regulations regulating the use and protection of **Personal Information** including but not limited to:

    a.   Health Insurance Portability and Accountability Act of 1996 (HIPAA) and the rules and regulations promulgated thereunder, as amended;

    b.   Gramm-Leach-Bliley Act of 1999 (GLBA) and the rules and regulations promulgated thereunder, as amended;

    c.   consumer protection and unfair and deceptive trade practice laws enforced by state Attorneys General or the Federal Trade Commission, including but not limited to Section 5(a) of the Federal Trade Commission Act, 15. U.S.C § 45 (a), as amended;

    d.   security breach notification laws that require notice to individuals of the actual or potential theft of their **Personal Information**, including but not limited to the California Security Breach Notification Act of 2003 (CA SB1386), as amended; or

    e.   any other state, federal or foreign statute or regulation requiring reasonable **Security** for **Personal Information**, or a privacy policy limiting the sale, disclosure or sharing of **Personal Information** or providing individuals with the right to access or correct **Personal Information**.

**"Private Information"** means any of the following information in the care, custody and control of any **Insured** or **Service Provider** (if applicable):

    a.   **Personal Information**; or

    b.   confidential or proprietary business information owned by any person or entity other than an **Insured** and expressly identified as confidential or proprietary, which is protected under a written non-disclosure or similar written agreement between such person or entity and the **Insured Entity**.

**"Programming"** means the writing, testing, customization, optimization and installation of computer programs, writing of program documentation and the performance of maintenance on established programs for others; development of custom and packaged software applications for use on computer hardware including mobile devices and websites.

**"Property Damage"** means:

a.  physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

"**Regulatory Action**" means a civil investigative demand or civil request for information, or a civil administrative or regulatory proceeding brought or made by a governmental agency or authority against the **Insured**, which alleges violation of a **Privacy Regulation**, and which may reasonably be expected to give rise to a civil suit covered under Insuring Clauses 2. or 4. of this Policy. **Regulatory Action** shall not mean or include any criminal demands, requests or proceedings.

"**Related Claims**" means all **Claims** for **Network Security Breaches, Privacy Breaches, Electronic Media Perils** or **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

"**Retroactive Date**" means the applicable retroactive date(s) set forth in Item 9. of the Declarations.

"**Security**" means the technical and physical controls, policies and procedures, and computer or network hardware or software intended to prevent unauthorized access to or unauthorized use of the **Insured's Computer System**, or data stored thereon, by a person.

"**Service Provider**" means any company hosting computer hardware, software or firmware, or storing or processing **Personal Information**, for or on behalf of the **Insured Entity** pursuant to a written contract with the **Insured Entity** that requires such **Service Provider** to indemnify the **Insured** for all **Network Security Breaches, Privacy Breaches** and acts, errors, omissions, neglect or breaches of duty in the display of **Electronic Content**.

"**Service Provider Network Interruption Business Income & Extra Expense Loss**" means covered **Network Interruption Business Income & Extra Expense Loss** that was the direct result of a **Network Interruption** caused by a **Network Security Breach** with respect to the **Security** of a **Service Provider**, and such **Network Interruption, Network Security Breach** and **Network Interruption Business Income & Extra Expense Loss** would have been covered under this Policy had the **Service Provider** been an **Insured**.

"**Subsidiary**" means any entity of which fifty percent (50%) or more of the voting securities is owned by the **Named Insured** and is listed as a **Subsidiary** in the Application to this Policy as of the inception date of the Policy, or named as a **Subsidiary** by endorsement to this Policy.

"**Systems Analysis/Software Design**" means the analysis of the information needs of others, analysis of proposed or existing electronic data processing systems and computer networks, recommending, planning and designing of electronic data processing procedures for others.

"**Technology Services**" means **Application Service Provider, Computer Services, Electronic Data Processing, Electronic Data Processing Consulting, Programming, System Analysis/Software Design,** or **Web Portal Services,** provided, however, that **Technology Services** are performed for others for a fee by the **Insured** or by any person or entity acting on behalf of the **Insured.**

"**Waiting Period**" means the period of time that begins when the **Period of Recovery** begins and ends when the number of hours identified as **Waiting Period** as set forth in Item 8. of the Declarations, elapses. A **Waiting Period** shall apply to each **Period of Recovery.**

"**Web Portal Services**" means providing access to data and software applications that are privately owned by the **Insured Entity's** customers or separately by the **Insured's** customers.

"**Wrongful Act**" means any actual or alleged act, error, omission, neglect or breach of duty committed by any **Insured** or by any person for whom the **Insured** is legally liable.

## III. EXCLUSIONS

1. The Insurer shall not be liable to make any payment for **Loss** or **Claim** based upon, arising out of, directly or indirectly resulting from, or in consequence of:

   a. any actual or alleged dispute or obligation for any fees, expenses, or costs paid to or charged by the **Insured**, including but not limited to licensing fees, royalties, contingent compensation or the amount or timeliness of such payments;

   b. any actual or alleged discrimination on any basis, by the **Insured**, including without limitation race, creed, color, religion, ethnic background, national origin, age, handicap, disability, gender, sexual orientation or pregnancy;

   c. any actual or alleged **Bodily Injury** or **Property Damage**; provided, however, this exclusion shall not apply to mental injury, mental anguish, emotional distress, pain and suffering, or shock with respect to any otherwise covered **Claim** under Insuring Clause 3. for an **Electronic Media Peril** as defined in subsections a. and b. of that definition;

   d. any actual or alleged **Wrongful Act** committed by an **Insured** where the **Claim** is brought by another **Insured** (or shareholder, of the **Insured Entity**), including but not limited to, derivative suits;

   e. any actual or alleged uploading, downloading, piracy or file-sharing of digitized media, music, photos, movies, software or video games;

   f. any actual or alleged **Personal Injury**; provided, however, this exclusion shall not apply with respect to any otherwise covered **Claim** under:

      i. Insuring Clause 1. for **Technology Services**; or

      ii. Insuring Clause 2. for a **Privacy Breach**; or

      iii. Insuring Clause 3. for an **Electronic Media Peril** as defined in subsections a. and b. of that definition;

   g. any actual or alleged contractual liability or obligation, or any breach of warranty, guarantee, promise or contract, including but not limited to liability of others assumed by the **Insured** under any warranty, guarantee, promise or contract, unless such liability would have attached to the **Insured** by law even in the absence of such warranty, guarantee, promise or contract;

   h. any actual or alleged:

      i. price fixing, restraint of trade, monopolization, by the **Insured**, including violations of the Sherman Anti-Trust Act, the Clayton Act, or any similar provision of any federal, state, or local statutory law or common law anywhere in the world;

      ii. wrongful employment practice, by the **Insured**, including, but not limited to, any harassment, hostile work environment, wrongful dismissal, discharge or termination, retaliation, wrongful disciplinary action, deprivation of career opportunity, failure to employ or promote, inadequate work place policies or procedures, or negligent evaluation of employees;

      iii. unfair trade practices or violation of consumer protection laws; provided, however that this exclusion shall not apply to any otherwise covered **Claim** or **Loss** under Insuring Clauses 2., 4. or 5.;

      iv. violation, by the **Insured**, of the Employee Retirement Income Security Act of 1974, as amended; the Securities Act of 1933, as amended; the Securities Exchange Act of 1934, as amended; or any state Blue Sky or securities law or similar state, foreign or federal statute, including any regulation or order issued pursuant to any of the foregoing statutes;

      v. infringement, misappropriation or violation of any patent, copyright, trademark, service mark, trade dress or trade name; provided, however, that this exclusion shall not apply to any otherwise covered **Claim** under Insuring Clauses 1. or 3. for infringement of a copyright, trademark, trade name, trade dress, title, slogan, service mark or service name;

vi. copying, infringement, misappropriation, display or publication of any trade secret; provided, however, this exclusion shall not apply to any otherwise covered **Claim**, under Insuring Clauses 2. or 4. arising out of the misappropriation of a trade secret by any individual who is not an **Insured** or a former employee, shareholder, member, independent contractor, director, officer, partner or trustee of an **Insured**;

i. any actual or alleged seizure, confiscation, destruction or nationalization of the **Insured's Computer System** or any **Data Asset** by or on behalf of any governmental or public authority;

j. any actual or alleged inaccurate, inadequate or incomplete description of the price of goods, products or services, or of the authenticity of any goods, products or services, or the failure of any goods, products or services to conform with any represented quality or performance;

k. any actual or alleged wear and tear or gradual deterioration of the **Insured's Computer System** or any physical computer hardware of the **Insured's Computer System** or any loss of value to any software application or **Data Asset**, including same becoming outdated or outmoded;

l. any actual or alleged interruption, suspension, failure or outage of any component of the internet, including without limitation any hardware or software infrastructure supporting the internet, unless such hardware or software infrastructure was under the **Insured Entity's** direct operational control;

m. any actual or alleged injury or damage which would have not occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants**, including but not limited to asbestos, at any time;

n. any actual or alleged request, demand, or order that any **Insured** or others, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**;

o. any actual or alleged fire, smoke, explosion, lightning, wind, water, flood, earthquake, volcanic eruption, tidal wave, landslide, hail, act of God or other physical event, however caused;

p. any actual or alleged strike or similar action, war, invasion, act of foreign enemy, hostilities or warlike operations (whether declared or not), civil war, mutiny, civil commotion assuming the proportions of or amounting to a popular rising, military rising, insurrection, rebellion, revolution, military or usurped power, or any action taken to hinder or defend against these actions;

q. any actual or alleged satellite, electrical, mechanical or telecommunications failure including any electrical power interruption, surge, brownout or blackout; provided that this exclusion shall not apply to any otherwise covered **Claim** under Insuring Clause 4. arising out of a **Network Security Breach** that was solely the result of telecommunications infrastructure under the **Insured Entity's** direct operational control;

r. any actual or alleged costs or expenses incurred by any **Insured** to recall, repair, withdraw, replace, upgrade, supplement or remove any **Electronic Content** or other information, content or media containing such **Electronic Content**;

s. any actual or alleged material deficiency in the **Insured Entity's Security** of which any **Insured** was aware prior to the effective date of this Policy or any prior Policy of which this Policy is a renewal or a replacement;

t. any actual or alleged **Network Security Breach, Privacy Breach, Electronic Media Peril, Wrongful Act, Corruption of a Data Asset, Network Interruption**, or **Cyber Extortion Threat**, by a **Subsidiary** or its employees, independent contractors, partners, members, executives, officers or directors, committed or occurring during any time that a **Subsidiary** is not owned by the **Insured Entity**;

u. any actual or alleged **Network Security Breach, Privacy Breach, Electronic Media Peril, Wrongful Act, Corruption of a Data Asset, Network Interruption** or **Cyber Extortion Threat** committed or occurring prior to the effective date of this Policy, or any prior policy issued by the Insurer of which this Policy is a renewal, if any **Insured** knew or reasonably should have foreseen that the **Network Security Breach, Privacy Breach, Electronic Media Peril, Wrongful Act, Corruption of a Data Asset, Network Interruption** or **Cyber Extortion Threat** would lead to a **Claim** or **Loss**;

v. any actual or alleged interrelated series of **Network Security Breaches, Privacy Breaches, Electronic Media Perils, Wrongful Acts, Corruptions of a Data Asset, Network Interruptions** or **Cyber Extortion Threats** where the earliest **Network Security Breach, Privacy Breach, Electronic Media Peril, Wrongful Act, Corruption of a Data Asset, Network Interruption** or **Cyber Extortion Threat** in the series first occurred prior to the inception of the Policy; or

w. any actual or alleged self-replicating or self-propagating code, script designed to disperse or copy itself, or other distributed attack which is not consciously introduced into or targeted at the **Insured's Computer System**, regardless of its form and whether it comprises a virus, Trojan horse, worm, malware or other malicious software program, code or script.

2. The Insurer shall not be liable for **Loss**:

a. with respect to Insuring Clauses 1., 2., 3. and 4. on account of any **Claim** based upon, arising out of, directly or indirectly resulting from, or in consequence of any actual or alleged dishonest, fraudulent, criminal, malicious or intentional act, error or omission, or any intentional or knowing violation of the law by, or with the knowledge of, any principal, partner, officer or director of the **Insured Entity**, or any actual or alleged gaining of any profit, remuneration or financial advantage to which any **Insured** was not legally entitled; provided, that this exclusion shall not apply to any other **Insured** who did not participate in, ratify, acquiesce in, or remain passive after gaining personal knowledge of, any such act, error or omission; and provided further that this exclusion shall not apply to **Claim Expenses** paid on behalf of the **Insured** to defend any such **Claim** until there is a judgment against, binding arbitration against, adverse admission by, a finding of fact against, or plea of no contest by any principal, partner, officer or director of the **Insured Entity**, at which time the **Insured Entity** shall reimburse the Insurer for any **Claim Expenses** paid by the Insurer; or

b. with respect to Insuring Clauses 5., 6., 7. and 8. based upon, arising out of, directly or indirectly resulting from, or in consequence of any actual or alleged dishonest, fraudulent, criminal, malicious or intentional act, error or omission, or any intentional or knowing violation of the law by, or with the knowledge of any principal, partner, officer or director of the **Insured Entity**, or any actual or alleged gaining of any profit, remuneration or financial advantage to which any principal, partner, officer or director of the **Insured Entity** was not legally entitled.

3. The Insurer shall not be liable for **Loss** on account of any **Claim** brought by or on behalf of:

a. any **Insured** against any other **Insured**; provided, however, with respect to Insuring Clause 2. only, this exclusion shall not apply to an otherwise covered **Claim** brought by or on behalf of an independent contractor or an employee of the **Insured Entity** alleging a **Privacy Violation** involving their **Personal Information**, provided also such independent contractor or employee is not involved in any manner with the unauthorized access to, theft of or copying of such **Personal Information**;

b. the Federal Trade Commission, the Federal Communications Commission, or any other federal, state, or local or foreign government agency or regulator; provided, however that this exclusion shall not apply to **Claim Expenses** incurred by the **Insured** as the result of an otherwise covered **Regulatory Action** under Insuring Clauses 2. or 4.;

c. any intellectual property licensing or royalty body, organization or trade group, including but not limited to Broadcast Music, Inc., the American Society of Composers, Authors and Publishers, the Society of European Stage Authors and Composers, the Recording Industry Association of America and the Motion Picture Association of America;

d. any governmental authority for testing, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**;

e. any organization or business enterprise which is not an **Insured** but which either owns or has an ownership interest greater than ten percent (10%) in any **Insured**;

f. any organization or business enterprise which is not an **Insured** but which controls, operates or manages any **Insured**; or

g. any **Insured** for or on behalf of any organization or business enterprise which is not an **Insured** but which any **Insured** controls, operates or manages.

4. With respect to Insuring Clauses 1., 2., 3. and 4. only, the Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any of the **Insureds** based upon, arising out of, directly or indirectly resulting from, or in consequence of:

Insured

a.  any actual or alleged unsolicited electronic faxes, emails, telephone calls or unsolicited communications, including but not limited to unsolicited electronic messages, chat room postings, bulletin board postings, newsgroup postings, "pop-up" or "pop-under" internet advertising or fax-blasting, direct mailing or telemarketing, or **Claims** alleging violations of the Telephone Consumer Protection Act, of 1991, as amended, the CAN-SPAM Act of 2003, as amended, and any other federal, foreign or state anti-spam statutes, or federal, foreign or state statue, law or regulation relating to a person's right to privacy;

b.  any actual or alleged unauthorized or illegal collection of **Personal Information**, including but not limited to the collection of **Personal Information** using cookies, spyware, or other **Malicious Code**, or the failure to provide adequate notice that **Personal Information** is being collected; or

c.  Section 605 (requirements relating to information contained in consumer reports) or 616 (civil liability for willful noncompliance) of the Fair Credit Reporting Act, as amended, or any other similar federal, state or local laws or regulations, including but not limited to any laws or regulations requiring truncation of payment card numbers on, or the removal of the expiration date from, payment card receipts.

## IV. CONDITIONS

1.  **Limits of Liability and Deductible**

    a.  **Limits of Liability**

    The amount stated in Item 4. of the Declarations for this Policy will be the maximum Annual Aggregate Limit of Liability of the Insurer under this Policy for all **Loss** from all **Claims, Network Interruptions, Network Security Breaches, Privacy Breaches, Electronic Media Perils, Wrongful Acts, Data Losses** or **Cyber Extortion Threats**, for which this Policy provides coverage, regardless of the time of payment by the Insurer.

    All **Loss** is part of and not in addition to the amount stated in Item 4. of the Declarations for this Policy. Any payment of **Loss** by the Insurer will reduce the amount stated in Item 4. of the Declarations.

    The Limits and Sublimits shown in the Declarations and described herein are the most the Insurer will pay, regardless of the number of **Insureds**, **Insureds**, individuals or entities making **Claims, Network Security Breaches, Privacy Breaches, Electronic Media Perils, Wrongful Acts, Network Interruptions, Data Losses** or **Cyber Extortion Threats**.

    If the amount stated in Item 4. of the Declarations for this Policy is exhausted by the payment of **Loss**, the premium will be fully earned, all obligations of the Insurer under this Policy will be completely fulfilled and exhausted, and the Insurer will have no further obligations of any kind or nature whatsoever under this Policy.

    b.  **Deductible**

    The Insurer's liability with respect to all **Loss** under this Policy, shall only apply to that part of **Loss** which is excess of the **Deductible** set forth in Item 7. of the Declarations for the Policy. As a condition precedent to the Insurer's liability under this Policy, the **Insured** shall pay the **Deductible** set forth in Item 7. of the Declarations for the Policy and the **Deductible** shall be borne by the **Insured** uninsured and at its own risk.

    A separate **Deductible** shall apply to each **Loss** under this Policy resulting from each **Claim, Network Interruption, Network Security Breach, Privacy Breach** or **Cyber Extortion Threat**; however, a single **Deductible** shall apply to all **Loss** resulting from any **Claim, Network Interruption, Network Security Breach, Privacy Breach** or **Cyber Extortion Threat** for any **Loss** that has as a common nexus any fact, circumstance, situation, event, transaction or cause, or series of related facts, circumstances, situations, events, transactions or causes.

2.  **Sublimits and Non-stacking of Limits**

    The amounts stated in Item 5. of the Declarations for the Policy as Sublimits of Liability are part of, and not in addition to, the maximum Annual Aggregate Limit of Liability stated in Item 4. of the Declarations.

    For **Claims** arising under Insuring Clauses 1., 2., 3. or 4. of this Policy, the corresponding Sublimit for each **Claim** specified in the first column in Items 5. a. - d. of the Declarations, shall be the Insurer's maximum liability for **Damages** and **Claim**

Expenses for each Claim during the **Policy Year**, and subject to the corresponding Sublimit for each **Policy Year** Aggregate specified in the second column in Items 5. a. - d., of the Declarations, which are part of and not in addition to the maximum Annual Aggregate Limit of Liability stated in Item 4. of the Declarations.

Each payment made under Insuring Clauses 5., 6., 7. or 8. of this Policy shall reduce the **Insuring Clause 5-8 Sublimit** stated in Item 6. of the Declarations for the Policy and the maximum Annual Aggregate Limit of Liability stated in Item 4. of the Declarations, or any portion thereof remaining at the time of the payment, until it is exhausted. Upon payment of **Insuring Clause 5-8 Sublimit** stated in Item 6. of the Declarations or exhaustion of the maximum Annual Aggregate Limit of Liability stated in Item 4. of the Declarations, the Insurer shall have no further liability for Insuring Clauses 5., 6., 7. or 8. of the Policy.

If any **Claim** made against an **Insured** or if any **Network Security Breaches, Privacy Breaches, Electronic Media Perils, Network Interruptions, Wrongful Acts, Data Losses** or **Cyber Extortion Threats**, give(s) rise to coverage both under this Policy and under any other policy(ies) or coverage section(s) issued by the Insurer or any other company of the RLI Insurance Group, the maximum liability of the Insurer and such other RLI Company, combined, under this Policy and all such other policies, combined, for all **Loss**, including **Claim Expenses**, in respect of such **Claim** shall not exceed the largest single available Limit of Liability under any such policy or coverage section, including this Policy.

3.   **Defense and Settlement**

With respect to Insuring Clauses 1., 2., 3. and 4. the Insurer shall have the right and duty to defend any **Claim** covered by this Policy, even if any of the allegations are groundless, false or fraudulent. The Insurer's duty to defend shall cease upon exhaustion of the applicable Sublimit set forth in Item 5. of the Declarations or the aggregate Limit of Liability set forth in Item 4. of the Declarations for this Policy, whichever comes first.

The **Insureds** agree to provide the Insurer with all information, assistance and cooperation which the Insurer reasonably requests and agree that in the event of a **Claim, Network Interruption, Network Security Breach, Privacy Breach, Electronic Media Peril, Wrongful Act, Data Loss**, or **Cyber Extortion Threat**, the **Insureds** will do nothing that shall prejudice the Insurer's position or its potential or actual rights of recovery.

The Insurer may, with the written consent of the **Insureds**, make any settlement of a **Claim** the Insurer deems expedient. If the **Insureds** withhold consent to such settlement, the Insurer's liability for all **Loss** on account of such **Claim** shall not exceed the amount for which the Insurer could have settled such **Claim** plus **Claim Expenses** accrued as of the date such settlement was proposed in writing by the Insurer to the **Insured**.

The **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Claim Expenses** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Insurers' prior written consent, which shall not be unreasonably withheld. The Insurer shall not be liable for any settlement, **Claim Expenses**, assumed obligation or admission to which it has not previously consented.

4.   **Notice/Claim Reporting Provisions**

a.   **Notice of Claims**

As a condition precedent to any right of payment with respect to any **Claim**, the **Insured Entity** must give the Insurer written notice of such **Claim** with full details, as soon as practicable after the **Claim** is first made, but no later than sixty (60) days after the expiration or termination of this Policy,

b.   **Notice of Circumstance**

If, during the **Policy Period**:

i.   an **Insured** first becomes aware of a **Network Security Breach, Privacy Breach, Electronic Media Peril** or **Wrongful Act** which may subsequently give rise to a **Claim**, and

ii.   the **Insured Entity** during the **Policy Period** gives the Insurer written notice of such **Network Security Breach, Privacy Breach, Electronic Media Peril** or **Wrongful Act** including a description of the **Network Security Breach, Privacy Breach, Electronic Media Peril** or **Wrongful Act**, the identities of the potential claimants, the consequences which have resulted or may result from such **Network Security Breach, Privacy Breach, Electronic Media Peril** or **Wrongful Act** and the circumstances by which the **Insured** first became aware of such **Network Security Breach, Privacy Breach, Electronic Media Peril** or **Wrongful Act**, and

Insured

iii.  the **Insured Entity** requests coverage under this Policy for any subsequent **Claim** arising from such **Network Security Breach, Privacy Breach, Electronic Media Peril** or **Wrongful Act;**

then the Insurer will treat any such subsequent **Claim** as if it had been first made during the **Policy Period.**

All **Related Claims** will be treated as a single **Claim** made when the earliest of such **Related Claims** was first made, regardless of whether such date is before or during the **Policy Period.**

c.  **Notice of Loss**

With respect to Insuring Clauses 5., 6. and 7. as a condition precedent to coverage under this Policy, the **Insured Entity** must provide written notice to the Insurer of any **Network Interruption, Network Security Breach, Privacy Breach,** or **Corruption** of a **Data Asset** (as applicable) for which it seeks coverage as soon as practicable during the **Policy Period** but no later than twelve (12) months after the expiration of the **Policy Period.**

With respect to Insuring Clause 8. as a condition precedent to coverage under this Policy, the **Insured Entity** must provide written notice to the Insurer of any **Cyber Extortion Threat** for which it seeks coverage no later than thirty (30) days after the expiration of the **Policy Period.**

d.  **Reporting of Claims, Circumstances and Losses**

All notices referenced in 4 a. through c. above must be sent by e-mail at new.claim@rlicorp.com; fax at 1-866-692-6796, or prepaid express courier or certified mail to RLI Insurance Company, Attention: Claim Department, 9025 North Lindbergh Drive, Peoria, Illinois 61615-1431.

5.  **Cancellation and Nonrenewal**

This Policy shall terminate at the earliest of the following times:

a.  the effective date of termination specified in a prior written notice by the **Named Insured** to the Insurer;

b.  ten (10) days after the receipt by the **Named Insured** of a written notice of termination from the Insurer based upon failure to pay premium due, unless such premium is received by the Insurer prior to such tenth (10th) date;

c.  at such other time as may be agreed upon by the Insurer and the **Named Insured**; or

d.  upon expiration of the **Policy Period** as set forth in Item 2. of the Declarations of this Policy.

The Insurer shall refund the unearned premium computed at ninety percent (90%) of pro-rata if this Policy is terminated by the **Named Insured**. Under any other circumstances the refund shall be computed pro rata. Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable. If the **Policy Period** is more than eighteen (18) months, the premium charged for this Policy shall be fully earned at inception of the **Policy Period.**

The Insurer shall not be required to renew this Policy upon its expiration.

6.  **Extended Claims Reporting Periods**

If: i) the **Named Insured** cancels this Policy, ii) either the Insurer or the **Named Insured** refuses or declines to renew this Policy for any reason, iii) a Transaction described in Condition 10. occurs, or, iv) solely with respect to the below mentioned Automatic Extended Claims Reporting Period, this Policy is renewed by the Insurer, the **Named Insured** shall have the right to:

a.  **Automatic Extended Claims Reporting Period**

i.  in accordance with items i), ii) and iii) above, a sixty (60) day period (an "Automatic Extended Claims Reporting Period") immediately following the termination date of this Policy during which the **Insured** may report to the Insurer in writing **Claims** under Insuring Clauses 1., 2., 3. or 4. first made against an **Insured** during this Automatic Extended Claims Reporting Period for any **Network Security Breach, Privacy Breach, Electronic Media Peril** or **Wrongful Act** committed prior to the end of the **Policy Period** and otherwise covered by this Policy;

ii. solely in accordance with item iv) above, a sixty (60) day period (an "Automatic Extended Claims Reporting Period") immediately following the renewal of this Policy, by the Insurer, during which the **Insured** may report to the Insurer in writing **Claims** first made against an **Insured**, during the last thirty (30) days of the **Policy Period**, under Insuring Clauses 1., 2., 3. or 4. for any **Network Security Breach, Privacy Breach, Electronic Media Peril** or **Wrongful Act** committed prior to the end of the **Policy Period** and otherwise covered by this Policy.

The Automatic Extended Claims Reporting Period shall not apply to **Claims** that are covered under any subsequent insurance the **Insured** purchases or that is purchased for the **Insured's** benefit or that would be covered but for the exhaustion of the amount of insurance applicable to such **Claims** or that is within any **Deductible** amount. This Automatic Extended Claims Reporting Period may not be cancelled by the Insurer and does not require the payment of an additional premium. This Automatic Extended Claims Reporting Period shall be included within the Optional Extended Claims Reporting Period if such is purchased. The Automatic Extended Claims Reporting Period shall not in any way increase the Limits or Sublimits of Liability of this Policy.

b. **Optional Extended Claims Reporting Period**

purchase an Optional Extended Claims Reporting Period, for the period specified in Item 10. b. of the Declarations, during which the **Named Insured** may report to the Insurer in writing **Claims** under Insuring Clauses 1., 2., 3. or 4. first made against an **Insured** during this Optional Extended Claims Reporting Period for any **Network Security Breach, Privacy Breach, Electronic Media Peril** or **Wrongful Act** committed prior to the end of the **Policy Period** and otherwise covered by this Policy.

i. The Optional Extended Claims Reporting Period will commence on the effective date of such cancellation, nonrenewal or a Transaction, as described in Condition 10., occurs. The Optional Extended Claims Reporting Period will run concurrently with the Automatic Extended Claims Reporting Period.

ii. The Optional Extended Claims Reporting Period shall be effective only upon the payment of an additional premium specified in Item 10. a. of the Declarations. At the commencement of the Optional Extended Claims Reporting Period, the entire premium shall be deemed fully earned and nonrefundable.

iii. The **Named Insured's** right to purchase the Optional Extended Claims Reporting Period must be exercised by written notice postmarked no later than sixty (60) days after the cancellation, nonrenewal or a Transaction, as described in Condition 10., occurs. The notice to purchase must include payment of the premium for the Optional Extended Claims Reporting Period.

The Automatic Extended Claims Reporting Period and the Optional Extended Claims Reporting Period will provide that a **Claim** first made during these periods will be deemed to have been made on the last day of the **Policy Period**. The Automatic Extended Claims Reporting Period and the Optional Extended Claims Reporting Period will not extend the **Policy Period** or reinstate or increase the Limit of Liability or Sublimits of Liability set forth in either Item 4. or Item 5. of the Declarations of the Policy. The Automatic Extended Claims Reporting Period or the Optional Extended Claims Reporting Period applies only to **Claims** arising out of a **Network Security Breach, Privacy Breach, Electronic Media Peril** or **Wrongful Act** covered under this Policy. Such **Network Security Breach, Privacy Breach, Electronic Media Peril** or **Wrongful Act** giving rise to the **Claim**, covered by this Policy, must be committed before the cancellation, nonrenewal or Transaction date as described in Condition 10. and after the applicable **Retroactive Date** as stated in Item 9. of the Declarations of the Policy.

The **Named Insured** shall have no right to the coverage provided by the Automatic Extended Claims Reporting Period and no right to purchase the Optional Extended Claims Reporting Period, unless the **Insured** has complied with all terms and conditions of the Policy and all outstanding premiums and **Deductible** have been paid in full.

7. **Worldwide Territory**

Coverage under this Policy shall extend anywhere in the world.

8. **Valuation of Foreign Currency**

All premiums, limits, **Deductible, Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of **Loss** under this Policy is stated in a currency other than United States of America dollars, payment under this Policy shall be made in United States dollars at the rate of exchange published in the <u>Wall Street Journal</u> on the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of **Loss** is due, respectively.

Insured

9.  **Acquisitions, Mergers and Subsidiaries**

If, during the **Policy Period** the **Named Insured** acquires a **Subsidiary**, then the **Subsidiary** shall be added by endorsement to the Policy, and its officers, directors, partners, members, principals, executives, employees, and independent contractors shall become **Insureds** as long as:

a.  the **Named Insured** gives written notice to the Insurer of the acquisition of the **Subsidiary** as soon as practicable, together with such information the Insurer may require, (except as provided for in (1) and (2) below), and

b.  the **Named Insured** pays any reasonable additional premium required by the Insurer.

Such coverage shall be afforded, subject to the terms and conditions of this Policy, from the date of the acquisition of the **Subsidiary**, but only for **Network Security Breaches**, **Privacy Breaches**, **Electronic Media Perils**, **Wrongful Acts**, **Network Interruptions** or **Cyber Extortion Threats** committed or allegedly committed after the acquisition of the **Subsidiary**, unless the Insurer agrees by endorsement to provide coverage for **Network Security Breaches**, **Privacy Breaches**, **Electronic Media Perils**, **Wrongful Acts**, **Network Interruptions** or **Cyber Extortion Threats** committed or allegedly committed prior to such date.

The conditions to such coverage set forth in a. and b. above shall not apply with respect to an acquisition of a **Subsidiary** if: (1) at the time of such acquisition, the total assets or the annual revenues of the **Subsidiary** so acquired represented less than ten percent (10%) of the total assets or the annual revenues of the **Named Insured** as reflected in the **Named Insured's** most current consolidated financial statements existing at the inception date of this Policy; or (2) in connection with such acquisition, the **Named Insured** assumes any liabilities and, at the time of such assumption, the liabilities so assumed represented less than ten percent (10%) of the total liabilities of the **Named Insured** as reflected in the **Named Insured's** most current consolidated financial statements existing at the inception date of this Policy.

10. **Change of Control**

If during the **Policy Period** the **Named Insured** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or organization or group of persons or organizations acting in concert (herein referred to as the "Transaction"); then this Policy shall continue in full force and effect as to **Network Security Breaches**, **Privacy Breaches**, **Electronic Media Perils**, **Wrongful Acts**, **Network Interruptions** or **Cyber Extortion Threats** occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this Policy for any **Network Security Breaches**, **Privacy Breaches**, **Electronic Media Perils**, **Wrongful Acts**, **Network Interruptions** or **Cyber Extortion Threats** occurring after the effective time of the Transaction. The entire premium for this Policy shall be deemed fully earned at the time of the Transaction and the **Named Insured** shall also have the right to elect an Extended Claims Reporting Period described in Condition 6. of this Policy or a greater period as may be negotiated with the Insurer.

The **Named Insured** shall give the Insurer written notice of the Transaction as soon as practicable, but not later than thirty (30) days after the effective date of the Transaction.

11. **Notice and Authorization**

All notices under this Policy shall be in writing and given by prepaid express courier, certified mail or fax, unless otherwise specified, and properly addressed to the appropriate party.

Notice to any **Insureds** may be given to the **Named Insured** at the address as shown in Item 1. of the Declarations. It is agreed the **Named Insured** shall act on behalf of all **Insureds** with respect to the giving and receiving of notice of **Claim** or **Loss**, cancellation or termination, the payment of premiums and the receiving of any return premiums that may become due under this Policy, the negotiation, agreement to and acceptance of any endorsements issued to form a part of this Policy, and the exercising or declining to exercise any right to an Extended Claims Reporting Period.

12. **Action Against the Insurer**

No action shall lie against the Insurer unless, as a condition precedent thereto, the **Insured** has fully complied with all the terms of this Policy, and the amount of the **Insured's** obligation to pay is finally determined, with respect to Insuring Clauses 1., 2., 3. and 4., after actual trial or arbitration against the **Insured** or by written agreement of the **Insured**, the claimant or the Insurer; or with respect to all other Insuring Clauses, by written agreement between the Insurer and the **Insured**. No person or organization shall have any right under this Policy to join the Insurer as a party to any action against the **Insured** to determine the **Insured's** liability, nor shall the Insurer be impleaded by the **Insured** into such action. The bankruptcy or insolvency of any of the **Insureds** shall not relieve the Insurer of its obligations under the Policy.

Insured

13.  **Other Insurance**

The insurance under this Policy shall apply in excess of any other valid and collectible insurance available to any **Insured** for **Loss** covered under this Policy, whether such insurance is stated to be primary, excess, contributory or otherwise, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided in this Policy. This Policy will not be subject to the terms of any other insurance.

14.  **Proof of Loss and Appraisal**

With respect to Insuring Clauses 6. and 7. as a condition precedent to any coverage under this Policy, the **Insured** shall:

a.  within ninety (90) days of sustaining a **Data Loss or Network Interruption Business Income & Extra Expense Loss** and no later than twelve (12) months after the expiration of the **Policy Period,** provide the Insurer with a written, detailed and sworn proof of loss. Such proof of loss shall include the following without limitation: the full particulars of the **Data Loss or Network Interruption Business Income & Extra Expense Loss** including but not limited to the time, date and cause of the **Network Interruption, Corruption of a Data Asset** and **Data Loss;** a detailed calculation of any **Data Loss or Network Interruption Business Income & Extra Expense Loss;** the **Insured Entity's** interest and the interest of all others in the property, the sound value thereof and the amount of **Data Loss or Network Interruption Business Income & Extra Expense Loss** or damage thereto and all other insurance thereon; and the underlying documents, data or materials that reasonably relate to or form the basis of the claim for such **Data Loss or Network Interruption Business Income & Extra Expense Loss.** The costs and expenses of preparing and submitting a proof of loss, and establishing or proving **Data Loss, Network Interruption Business Income & Extra Expense Loss** or any other **Loss** under this Policy shall be the **Insured's** obligation, and are not covered under this Policy;

b.  at the Insurer's request, the **Insured** shall submit to examination by a representative of the Insurer under oath.

With respect to Insuring Clauses 6. and 7. in the event the Insurer and **Insured** do not agree on the amount of **Data Loss** or **Network Interruption Business Income & Extra Expense Loss,** each party shall select and pay an appraiser or other qualified expert (the "Appraiser(s)") to determine the amount of the **Data Loss or Network Interruption Business Income & Extra Expense Loss,** and the Appraisers shall choose an umpire. If the Appraisers cannot agree on an umpire, the **Insured** or the Insurer may request a judge of a court having jurisdiction over the matter to make the selection. Each Appraiser shall submit the amount of the **Data Loss or Network Interruption Business Income & Extra Expense Loss** to the umpire, and agreement by the umpire and at least one of the Appraisers regarding the amount of the **Data Loss or Network Interruption Business Income & Extra Expense Loss** shall be binding on all **Insureds** and the Insurer. The **Insured** and the Insurer will equally share the costs of the umpire and any other costs relating to the proceeding, other than the cost of the Appraisers.

15.  **Assignment**

This Policy and any and all rights hereunder are not assignable without the written consent of the Insurer.

16.  **Termination of Prior Policies**

Any Policies issued by the Insurer or its affiliates and specified in Item 11. of the Declarations of this Policy shall terminate, if not already terminated, as of the inception date of this Policy.

17.  **Subrogation**

In the event of any payment under this Policy, the Insurer shall be subrogated to the extent of such payment to all the **Insureds'** rights of recovery. The **Insured** shall execute and deliver all instruments and papers and do whatever else is necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Insurer to effectively bring suit in the name of the **Insured.**

18.  **Application**

By accepting this Policy, and the insurance provided thereunder, the **Insureds** agree that the statements and representations made in the Application are true and material to the risk assumed by the Insurer. This Policy is issued in reliance upon the truth of such statements and representations, and this Policy embodies all agreements between the **Insureds** and the Insurer relating to this insurance.

19. **Changes**

   The terms and conditions of this Policy shall not be waived or changed, except by endorsement authorized by the Insurer and issued to form a part of this Policy.

20. **Headings**

   The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

21. **Entire Agreement**

   The **Insureds** agree that this Policy, including the Application and any endorsements, constitutes the entire agreement between the **Insureds** and the Insurer relating to the insurance provided by this Policy.

Insured

Policy Number:  TEC0002871                                                    RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALIFORNIA AMENDATORY ENDORSEMENT

The Policy is amended as follows:

**IV. CONDITIONS**, Section 5., **Cancellation and Nonrenewal**, is deleted in its entirety and replaced with the following:

**"5.  Cancellation and Nonrenewal**

This Policy shall terminate at the earliest of the following times:

a.   the effective date of termination specified in a prior written notice by the **Named Insured** to the Insurer;

b.   ten (10) days after the receipt by the **Named Insured** of a written notice of termination from the Insurer based upon failure to pay premium due, unless such premium is received by the Insurer prior to such tenth (10th) day;

c.   at such other time as may be agreed upon by the Insurer and the **Named Insured**; or

d.   upon expiration of the **Policy Period** as set forth in Item 2. of the Declarations of this Policy.

The Insurer shall refund the unearned premium computed at ninety percent (90%) of pro rata if this Policy is terminated by the **Named Insured**. Under any other circumstances the refund shall be computed pro rata. Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable."

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Policy Number: TEC0002871

RLI Insurance Company

## SIGNATURE PAGE

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Corporate Secretary

President & COO

ILF 0001C (04/16)

Insured

Policy Number:  TEC0002871

 **RLI Insurance Company**
Peoria, Illinois 61615

# NOTICE TO POLICYHOLDERS

## REGARDING THE UNITED STATES TREASURY DEPARTMENT – OFFICE OF FOREIGN ASSETS CONTROL (OFAC)

This Policyholder Notice does not provide coverage nor can it be construed to replace any provisions of your policy. Please read your policy carefully to determine your rights, duties, and what is and what is not covered by your policy. This Notice should only be used to provide information concerning the possible impact of your insurance coverage as it relates to directives issued by OFAC.

**PLEASE READ THIS NOTICE CAREFULLY.**

OFAC administers and enforces economic and trade sanctions and places restrictions on certain transactions. OFAC acts pursuant to Executive Orders of the President of the United States and specific legislation. OFAC has identified and named numerous foreign agents, front organizations, terrorists, terrorist organizations, and narcotics traffickers, among others, as "Specially Designated Nationals and Blocked Persons." The complete list can be found on the United States Treasury website – http://www.treas.gov/ofac.

Various trade or economic sanctions and other laws or regulations prohibit us from providing insurance in certain circumstances. In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance contract is considered a blocked or frozen contract and will be considered null and void. When an insurance policy is considered to be a blocked or frozen contract, all provisions of this insurance will be immediately subject to OFAC, and neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments may also apply.

ctronically FILED by Superior Court of California, County of Los Angeles on 07/12/2022 10:03 AM Sherri R. Carter, Executive Officer/Clerk of Court, by S. Ruiz,Deputy Clerk
22STCV22322

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Patrick J.L.Cleveland, Esq (SBN 338706)
Schlichter & Shonack, LLP
2381 Rosecrans Avenue, Suite 326
El Segundo, California 90245
TELEPHONE NO.: (310) 643-0111     FAX NO.: (310) 643-1638
ATTORNEY FOR *(Name):* Plaintiff, ROYAL 4 SYSTEMS

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: STANLEY MOSK COURTHOUSE
MAILING ADDRESS: 111 N. Hill St.
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: STANLEY MOSK COURTHOUSE

CASE NAME:
Royal 4 Systems v. RLI Insurance Company, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | 22STCV22322 |
| | | | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[✓] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
4. Number of causes of action *(specify):* 2
5. This case [ ] is [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: July 11, 2022
Patrick J.L. Cleveland
_____
(TYPE OR PRINT NAME)

*Patrick Cleveland*
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 *www.courtinfo.ca.gov* |
|---|---|---|

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Royal 4 Systems v. RLI Insurance Company, et al. | 22STCV22322 |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 4   ☐ HOURS/ ☑ DAYS

Item II. Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked.
For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

> ### Applicable Reasons for Choosing Courthouse Location (see Column **C** below)
>
> 1. Class Actions must be filed in the County Courthouse, Central District.
> 2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
> 3. Location where cause of action arose.
> 4. Location where bodily injury, death or damage occurred.
> 5. Location where performance required or defendant resides.
> 6. Location of property or permanently garaged vehicle.
> 7. Location where petitioner resides.
> 8. Location wherein defendant/respondent functions wholly.
> 9. Location where one or more of the parties reside.
> 10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/Property Damage/Wrongful Death Tort | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| Non-Personal Injury/Property Damage/Wrongful Death Tort | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |

CIV 109 03-04 (Rev. 03/06)
LASC Approved

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 1 of 4

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Royal 4 Systems v. RLI Insurance Company, et al. | |

| | A<br>Civil Case Cover<br>Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>-See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont'd.)** | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☑ A6015  Insurance Coverage (not complex) | 1., ②., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation        Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: Royal 4 Systems v. RLI Insurance Company, et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review (Cont'd.)** | Writ of Mandate<br><br>(02) | ☐ A6151   Writ - Administrative Mandamus<br>☐ A6152   Writ - Mandamus on Limited Court Case Matter<br>☐ A6153   Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review<br>(39) | ☐ A6150   Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade<br>Regulation (03) | ☐ A6003   Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007   Construction defect | 1., 2., 3. |
| | Claims Involving Mass<br>Tort (40) | ☐ A6006   Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035   Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036   Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014   Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment<br><br>(20) | ☐ A6141   Sister State Judgment<br>☐ A6160   Abstract of Judgment<br>☐ A6107   Confession of Judgment (non-domestic relations)<br>☐ A6140   Administrative Agency Award (not unpaid taxes)<br>☐ A6114   Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112   Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033   Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above)<br><br>(42) | ☐ A6030   Declaratory Relief Only<br>☐ A6040   Injunctive Relief Only (not domestic/harassment)<br>☐ A6011   Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000   Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance(21) | ☐ A6113   Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br><br>(43) | ☐ A6121   Civil Harassment<br>☐ A6123   Workplace Harassment<br>☐ A6124   Elder/Dependent Adult Abuse Case<br>☐ A6190   Election Contest<br>☐ A6110   Petition for Change of Name<br>☐ A6170   Petition for Relief from Late Claim Law<br>☐ A6100   Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

CIV 109 03-04 (Rev. 03/06)
LASC Approved

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 3 of 4

| SHORT TITLE:<br>Royal 4 Systems v. RLI Insurance Company, et al. | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE<br><br>☐1. ☑2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:<br>5000 E Spring St, Ste. 415 |
|---|---|
| CITY:<br>Long Beach | STATE:<br>CA | ZIP CODE:<br>90815 | |

Item IV. *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Stanley Mosk_____ courthouse in the Central_____ District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: July 11, 2022_____

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

| **PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:** |
|---|

1.  Original Complaint or Petition.

2.  If filing a Complaint, a completed Summons form for issuance by the Clerk.

3.  Civil Case Cover Sheet form CM-010.

4.  Complete Addendum to Civil Case Cover Sheet form LASC Approved CIV 109 03-04 (Rev. 03/06).

5.  Payment in full of the filing fee, unless fees have been waived.

6.  Signed order appointing the Guardian ad Litem, JC form 982(a)(27), if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7.  Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>07/12/2022<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ S. Ruiz _____ Deputy |
| NOTICE OF CASE ASSIGNMENT<br><br>UNLIMITED CIVIL CASE | |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>22STCV22322 |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✔ | Yolanda Orozco | 31 | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 07/12/2022
(Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By S. Ruiz _____, Deputy Clerk

LACIV 190 (Rev 6/18)

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

### INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

# VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

❖**Los Angeles County Bar Association Litigation Section**❖

❖ **Los Angeles County Bar Association
Labor and Employment Law Section**❖

❖**Consumer Attorneys Association of Los Angeles**❖

❖**Southern California Defense Counsel**❖

❖**Association of Business Trial Lawyers**❖

❖**California Employment Lawyers Association**❖

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:      FAX NO. (Optional): <br> E-MAIL ADDRESS (Optional): <br> ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | | CASE NUMBER: |
|---|---|---|
| | | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

    h.  Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

    i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2.    The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
            (INSERT DATE)                  (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.    The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.    References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____      ➤ _____
      (TYPE OR PRINT NAME)                  (ATTORNEY FOR PLAINTIFF)
Date:

_____      ➤ _____
      (TYPE OR PRINT NAME)                  (ATTORNEY FOR DEFENDANT)
Date:

_____      ➤ _____
      (TYPE OR PRINT NAME)                  (ATTORNEY FOR DEFENDANT)
Date:

_____      ➤ _____
      (TYPE OR PRINT NAME)                  (ATTORNEY FOR DEFENDANT)
Date:

_____      ➤ _____
      (TYPE OR PRINT NAME)                  (ATTORNEY FOR _____)
Date:

_____      ➤ _____
      (TYPE OR PRINT NAME)                  (ATTORNEY FOR _____)
Date:

_____      ➤ _____
      (TYPE OR PRINT NAME)                  (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:     FAX NO. (Optional): <br> E-MAIL ADDRESS (Optional): <br> ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – DISCOVERY RESOLUTION** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

LACIV 036 (new) <br> LASC Approved 04/11 <br> For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

    iii.    Be filed within two (2) court days of receipt of the Request; and

    iv.    Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

    It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

## The following parties stipulate:

Date: _____

➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)

Date: _____

➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date: _____

➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date: _____

➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date: _____

➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date: _____

➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date: _____

➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

[ Print ]   [ Save ]                                                    [ Clear ]

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:        FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

   ☐ Request for Informal Discovery Conference
   ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>

LACIV 094 (new)
LASC Approved 04/11
For Optional Use

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

Print          Save          Clear

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:  FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

## THE COURT SO ORDERS.

Date: _____

_____
JUDICIAL OFFICER

| Print | Save | | Clear |
|---|---|---|---|

1
2
3
4
5
6

FILED
LOS ANGELES SUPERIOR COURT

MAY 1 1 2011

JOHN A. CLARKE, CLERK
N. Navarro
BY NANCY NAVARRO, DEPUTY

7           SUPERIOR COURT OF THE STATE OF CALIFORNIA
8               FOR THE COUNTY OF LOS ANGELES
9

10    General Order Re                )    ORDER PURSUANT TO CCP 1054(a),
      Use of Voluntary Efficient Litigation   )    EXTENDING TIME TO RESPOND BY
11    Stipulations                   )    30 DAYS WHEN PARTIES AGREE
                                      )    TO EARLY ORGANIZATIONAL
12                                    )    MEETING STIPULATION
                                      )
13    _____     )

14

15        Whereas the Los Angeles Superior Court and the Executive Committee of the

16    Litigation Section of the Los Angeles County Bar Association have cooperated in

17    drafting "Voluntary Efficient Litigation Stipulations" and in proposing the stipulations for

18    use in general jurisdiction civil litigation in Los Angeles County;

19        Whereas the Los Angeles County Bar Association Litigation Section; the Los

20    Angeles County Bar Association Labor and Employment Law Section; the Consumer

21    Attorneys Association of Los Angeles; the Association of Southern California Defense

22

23    Counsel; the Association of Business Trial Lawyers of Los Angeles; and the California

24    Employment Lawyers Association all "endorse the goal of promoting efficiency in

25    litigation, and ask that counsel consider using these stipulations as a voluntary way to

26    promote communications and procedures among counsel and with the court to fairly

27    resolve issues in their cases;"

28

-1-

ORDER PURSUANT TO CCP 1054(a)

Whereas the Early Organizational Meeting Stipulation is intended to encourage cooperation among the parties at an early stage in litigation in order to achieve litigation efficiencies;

Whereas it is intended that use of the Early Organizational Meeting Stipulation will promote economic case resolution and judicial efficiency;

Whereas, in order to promote a meaningful discussion of pleading issues at the Early Organizational Meeting and potentially to reduce the need for motions to challenge the pleadings, it is necessary to allow additional time to conduct the Early Organizational Meeting before the time to respond to a complaint or cross complaint has expired;

Whereas Code of Civil Procedure section 1054(a) allows a judge of the court in which an action is pending to extend for not more than 30 days the time to respond to a pleading "upon good cause shown";

Now, therefore, this Court hereby finds that there is good cause to extend for 30 days the time to respond to a complaint or to a cross complaint in any action in which the parties have entered into the Early Organizational Meeting Stipulation.  This finding of good cause is based on the anticipated judicial efficiency and benefits of economic case resolution that the Early Organizational Meeting Stipulation is intended to promote.

IT IS HEREBY ORDERED that, in any case in which the parties have entered into an Early Organizational Meeting Stipulation, the time for a defending party to respond to a complaint or cross complaint shall be extended by the 30 days permitted

-2-

ORDER PURSUANT TO CCP 1054(a)

by Code of Civil Procedure section 1054(a) without further need of a specific court order.

DATED: _May 11, 2011_

Carolyn B. Kuhl, Supervising Judge of the
Civil Departments, Los Angeles Superior Court

-3-

ORDER PURSUANT TO CCP 1054(a)

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

**MAY 03 2019**

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
Rizalinda Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

IN RE LOS ANGELES SUPERIOR COURT )   FIRST AMENDED GENERAL ORDER
— MANDATORY ELECTRONIC FILING )
FOR CIVIL )
)
)
)
)

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) DEFINITIONS

    a) **"Bookmark"**  A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

    b) **"Efiling Portal"**  The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

    c) **"Electronic Envelope"**  A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

    d) **"Electronic Filing"**  Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

2019-GEN-014-00

e)  **"Electronic Filing Service Provider"**   An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court.  (California Rules of Court, rule 2.250(b)(8).)

f)  **"Electronic Signature"**   For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g)  **"Hyperlink"**   An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h)  **"Portable Document Format"**   A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2)  MANDATORY ELECTRONIC FILING

a)  Trial Court Records

Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format.  Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

b)  Represented Litigants

Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

c)  Public Notice

The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs.  Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

2019-GEN-014-00

d) Documents in Related Cases

Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3) EXEMPT LITIGANTS

a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4) EXEMPT FILINGS

a) The following documents shall not be filed electronically:

   i) Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

   ii) Bonds/Undertaking documents;

   iii) Trial and Evidentiary Hearing Exhibits

   iv) Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

   v) Documents submitted conditionally under seal. The actual motion or application shall be electronically filed. A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

b) Lodgments

Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form. The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

3

2019-GEN-014-00

5) ELECTRONIC FILING SYSTEM WORKING PROCEDURES

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) TECHNICAL REQUIREMENTS

   a) Electronic documents must be electronically filed in PDF, text searchable format **when** technologically feasible without impairment of the document's image.

   b) The table of contents for any filing must be bookmarked.

   c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4). Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

   d) Attachments to primary documents must be bookmarked. Examples include, but are not limited to, the following:

      i)     Depositions;

      ii)    Declarations;

      iii)   Exhibits (including exhibits to declarations);

      iv)    Transcripts (including excerpts within transcripts);

      v)     Points and Authorities;

      vi)    Citations; and

      vii)   Supporting Briefs.

   e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

   f) Accompanying Documents

   Each document acompanying a single pleading must be electronically filed as a **separate** digital PDF document.

   g) Multiple Documents

   Multiple documents relating to one case can be uploaded in one envelope transaction.

2019-GEN-014-00

h) Writs and Abstracts

Writs and Abstracts must be submitted as a separate electronic envelope.

i) Sealed Documents

If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j) Redaction

Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

a) Filed Date

i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing. Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted.   (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of:  (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) EX PARTE APPLICATIONS

a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day before the ex parte hearing.

2019-GEN-014-00

1      b)  Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the

2          day of the ex parte hearing.  A printed courtesy copy of any opposition to an ex parte

3          application must be provided to the court the day of the ex parte hearing.

4   9)  PRINTED COURTESY COPIES

5      a)  For any filing electronically filed two or fewer days before the hearing, a courtesy copy must

6          be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled.  If

7          the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom

8          by 10:00 a.m. the next business day.

9      b)  Regardless of the time of electronic filing, a printed courtesy copy (along with proof of

10        electronic submission) is required for the following documents:

11          i)    Any printed document required pursuant to a Standing or General Order;

12          ii)   Pleadings and motions (including attachments such as declarations and exhibits) of 26

13              pages or more;

14          iii)  Pleadings and motions that include points and authorities;

15          iv)  Demurrers;

16          v)   Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

17          vi)  Motions for Summary Judgment/Adjudication; and

18          vii)  Motions to Compel Further Discovery.

19      c)  Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of

20        additional documents.  Courtroom specific courtesy copy guidelines can be found at

21        www.lacourt.org on the Civil webpage under "Courtroom Information."

22  10)  WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

23      a)  Fees and costs associated with electronic filing must be waived for any litigant who has

24        received a fee waiver.  (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. §

25        1010.6(d)(2).)

26      b)  Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure

27        section 1010.6, subdivision (b)(6), and California Rules of Court, rule 2.252(f), may be

28        electronically filed in any authorized action or proceeding.

2019-GEN-014-00

1   11) SIGNATURES ON ELECTRONIC FILING

2      For purposes of this General Order, all electronic filings must be in compliance with California

3   Rules of Court, rule 2.257. This General Order applies to documents filed within the Civil

4   Division of the Los Angeles County Superior Court.

5

6      This First Amended General Order supersedes any previous order related to electronic filing,

7   and is effective immediately, and is to remain in effect until otherwise ordered by the Civil

8   Supervising Judge and/or Presiding Judge.

9

10   DATED: May 3, 2019        KEVIN C. BRAZILE
11                                                Presiding Judge
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



## Superior Court of California, County of Los Angeles

---

### ALTERNATIVE DISPUTE RESOLUTION (ADR)
### INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

---

### What is ADR?

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR

- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR

- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

## How to Arrange Mediation in Los Angeles County

Mediation for **civil cases** is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

- **ADR Services, Inc.** Case Manager Elizabeth Sanchez, elizabeth@adrservices.com (949) 863-9800
- **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

**These organizations cannot accept every case and they may decline cases at their discretion.** They may offer online mediation by video conference for cases they accept. Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

**NOTE:** The Civil Mediation Vendor Resource List program does not accept family law, probate or small claims cases.

b. **Los Angeles County Dispute Resolution Programs**
https://hrc.lacounty.gov/wp-content/uploads/2020/05/DRP-Fact-Sheet-23October19-Current-as-of-October-2019-1.pdf

Day of trial mediation programs have been paused until further notice.

**Online Dispute Resolution (ODR).** Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit http://www.lacourt.org/division/civil/C10047.aspx

Los Angeles Superior Court ADR website: http://www.lacourt.org/division/civil/C10109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

RLJ INSURANCE COMPANY,
an Illinois corporation
801 S Figueroa St #900
Los Angeles, CA 90017

Attn: Lisa Sirman

Janney & Janney Attorney Service
1000 Corporate Center Drive, Ste 110
Monterey Park, CA 91754